1 | NICOLA T. HANNA
United States Attorney
2 | LAWRENCE S. MIDDLETON
Assistant United States Attorney
3 | Chief, Criminal Division
JOHN J. LULEJIAN (Cal. Bar No. 186783)
4 | Assistant United States Attorney
      1200 United States Courthouse
5 |    312 North Spring Street
      Los Angeles, California 90012
6 |    Telephone: (213) 894-0721
      Facsimile: (213) 894-0141
7 |    E-mail:   John.Lulejian@usdoj.gov

8 | Attorneys for Applicant
UNITED STATES OF AMERICA



9

10 |            UNITED STATES DISTRICT COURT

11 |         FOR THE CENTRAL DISTRICT OF CALIFORNIA

12 | REQUEST FROM THE FEDERAL        No. CR Misc CR-M00823
REPUBLIC OF GERMANY FOR
13 | ASSISTANCE IN A                 *EX PARTE* APPLICATION FOR ORDER
CRIMINAL MATTER                 APPOINTING COMMISSIONER; EXHIBIT

14

15

16 |       Applicant United States of America hereby applies to this Court

17 | <u>ex parte</u> for an order, pursuant to the Treaty Between the United

18 | States of America and the Federal Republic of Germany on Mutual Legal

19 | Assistance in Criminal Matters, U.S.-F.R.G., Oct. 14, 2003, S. Treaty

20 | Doc. No. 108-27 (2004), as supplemented by the Supplementary Treaty

21 | to the Treaty Between the United States of America and the Federal

22 | Republic of Germany on Mutual Legal Assistance in Criminal Matters,

23 | U.S.-F.R.G., April 18, 2006, S. Treaty Doc. No. 109-13 (2006), as

24 | well as 18 U.S.C. § 3512, and its own inherent power, appointing

25 | Assistant United States Attorney John J. Lulejian as a Commissioner

26 | of the Court for the purpose of obtaining evidence sought by the

27 | Federal Republic of Germany.  This application is made pursuant to a

28

Request for Legal Assistance in a Criminal Matter from Germany and is based on the aforementioned treaty and the attached Memorandum of Points and Authorities and Exhibit.

DATED: May 11, 2018

Respectfully submitted,

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

/s/ John J. Lulejian
JOHN J. LULEJIAN
Assistant United States Attorney

Attorneys for Applicant
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

PAGES

MEMORANDUM OF POINTS AND AUTHORITIES ............................... 1

I.   BACKGROUND ..................................................... 1

    A.   SUMMARY ................................................... 1

    B.   FACTS ..................................................... 1

    C.   ASSISTANCE REQUESTED ...................................... 2

II.  DISCUSSION ..................................................... 2

    A.   THE ORDER SOUGHT IS APPROPRIATE TO ENABLE THE UNITED
        STATES TO FULFILL ITS TREATY OBLIGATIONS ................. 2

        1.   The Treaty ........................................... 2

        2.   Statutory Authority .................................. 4

    B.   EXECUTION OF FOREIGN REQUESTS FOR ASSISTANCE UNDER THE
        TREATY AND SECTION 3512 ................................... 5

        1.   Authorization of the Application to this Court ...... 5

        2.   Foreign Authority Seeking Assistance Within
            Section 3512 and the Treaty ......................... 7

        3.   Authority of the Federal Courts Under Section
            3512 ................................................. 7

    C.   APPOINTMENT OF A PERSON AS COMMISSIONER TO COLLECT
        EVIDENCE ................................................. 8

        1.   Statutory Authorization ............................. 8

        2.   Procedures for Evidence Collection .................. 8

            a.   Procedures Authorized by Other Statutes ........ 9

            b.   Orders by the Person Appointed; Commissioner
                Subpoenas ...................................... 9

            c.   Notice of Evidence Taking ..................... 10

            d.   Right to Financial Privacy Act ............... 11

III. CONCLUSION .................................................... 12

i

**TABLE OF AUTHORITIES**

PAGES

**FEDERAL CASES**

Asakura v. City of Seattle,
    265 U.S. 332 (1924), amended, 44 S. Ct. 634 (1924) ........... 2

Barr v. U.S. Department of Justice,
    645 F. Supp. 235  (E.D.N.Y. 1986) ............................. 3

In re Commissioner's Subpoenas,
    325 F.3d 1287 (11th Cir. 2003) ........................ 3, 9, 10

In re Erato,
    2 F.3d 11 (2nd Cir. 1993) ................................ 2, 10

In re Letter of Request for Judicial Assistance from the
    Tribunal Civil de Port-Au-Prince, Republic of Haiti,
    669 F. Supp. 403 (S.D. Fla. 1987) ...........................11

In re Letter of Request from the Crown Prosecution Service of
    the United Kingdom,
    870 F.2d 686 (D.C. Cir. 1989) ........................... 9, 10

In re Letters of Request from the Supreme Court of Hong Kong,
    821 F. Supp. 204 (S.D.N.Y. 1993) ...........................11

In re Letters Rogatory from the Tokyo District, Tokyo, Japan,
    539 F.2d 1216 (9th Cir. 1976) ...............................10

In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.,
    634 F.3D 557 (9 th Cir. 2011) ............................. 2, 4

United States v. Daccarett,
    6 F.3d 37 (2d Cir. 1993) ....................................12

United States v. Schooner Peggy,
    5 U.S. (1 Cranch) 103, 2 L. Ed. 49 (1801) ................... 2

White v. National Football League,
    41 F.3d 402 (8th Cir. 1994) ................................. 9

Young v. U.S. Dept. of Justice,
    882 F.2d 633 (2d Cir. 1989) ................................11

Zschernig v. Miller,
    389 U.S. 429 (1968) ......................................... 2

ii

**FEDERAL STATUTES**

12 U.S.C. § 3401 ............................................... 11

18 U.S.C. § 2703 ............................................. 6, 8

18 U.S.C. § 3123 ............................................... 8

18 U.S.C. § 3512 .......................................... passim

28 U.S.C. § 1782 .......................................... passim

RULES

Fed. R. Crim. P. 57(b) ......................................... 9

MEMORANDUM OF POINTS AND AUTHORITIES

I.   BACKGROUND

    A.   SUMMARY

Pursuant to the Treaty Between the United States of America and the Federal Republic of Germany on Mutual Legal Assistance in Criminal Matters, U.S.-F.R.G., Oct. 14, 2003, S. Treaty Doc. No. 108-27 (2004), as supplemented by the Supplementary Treaty to the Treaty Between the United States of America and the Federal Republic of Germany on Mutual Legal Assistance in Criminal Matters, U.S.-F.R.G., April 18, 2006, S. Treaty Doc. No. 109-13 (2006) (collectively hereinafter the "Treaty"; copy of the Treaty and related documents attached hereto as Exhibit 1), the Government of the Federal Republic of Germany ("Germany") has asked the United States for assistance in connection with a criminal investigation underway in Germany.

Applicant United States of America asks that Assistant United States Attorney John J. Lulejian be appointed a Commissioner of the Court to carry out portions of the Request applicable to this judicial district.

    B.   FACTS

The facts of the Request may be summarized as follows:

German authorities are investigating MICHAEL ROLAND BRAUN ("BRAUN") for illegally collecting pension benefits.  Until December 2012, BRAUN served as a member of the Bavarian State Police Authority.  After leaving the police, Braun moved to the United States, and in January 2013, began receiving a pension for health reasons.  German authorities suspect that Braun has earned income in the United States and has not reported it to the appropriate German authorities.  Under the applicable German law, a retired civil

1

1  servant must immediately inform German authorities about income
2  he/she earns to offset his/her pension.

3  **C.   ASSISTANCE REQUESTED**

4  With respect to the Central District of California, German
5  authorities have requested assistance in gathering information
6  related to BRAUN's green card/work visa, information regarding his
7  current employment, including but not limited to employment and wage
8  information since 2013, and whether BRAUN changed his name.

9  Applicant United States of America asks that Assistant United
10  States Attorney John J. Lulejian be empowered to issue compulsory
11  process to render that assistance as a Commissioner of this Court.

12  **II.   DISCUSSION**

13  **A.   THE ORDER SOUGHT IS APPROPRIATE TO ENABLE THE UNITED STATES**
14  **TO FULFILL ITS TREATY OBLIGATIONS**

15  **1.   The Treaty**

16  The United States is seeking an order appointing a Commissioner
17  to execute the Request from Germany.  A treaty constitutes the law of
18  the land.  See U.S. Const. Art. VI.  The provisions of a treaty stand
19  on equal footing with acts of Congress and are binding on the courts.
20  See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924), amended, 44
21  S. Ct. 634 (1924); United States v. Schooner Peggy, 5 U.S. (1 Cranch)
22  103.  To the extent that self-executing provisions of a treaty are
23  inconsistent with a preexisting statutory provision, the treaty
24  supersedes the statute.  Zschernig v. Miller, 389 U.S. 429, 440-441
25  (1968); In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.,
26  634 F.3d 557, 568 (9th Cir. 2011); In re Erato, 2 F.3d 11, 15 (2nd
27  Cir. 1993).

28

1    The Treaty obligates the United States and Germany "to afford

2  each other, through their competent authorities, the widest measure

3  of mutual assistance in criminal investigations and

4  proceedings . . . ."  See Ex. 1, Treaty, Art. 1(1).  The United

5  States and Germany entered into the Treaty for the purpose of

6  improving the effectiveness of the law enforcement authorities of

7  both states in the investigation and prosecution of crime.  See

8  Ex. 1, Letter of Transmittal of Treaty from the White House to the

9  Senate of the United States, November 16, 2004.  The Treaty obligates

10  each party to provide assistance to the other in investigations and

11  prosecutions of offenses, and in proceedings related to criminal

12  matters.  See Ex. 1, Art. 1(1).  See also In re Commissioner's

13  Subpoenas, 325 F.3d 1287, 1290 (11th Cir. 2003).  Each party

14  contemplated that it would provide the other with assistance

15  generally comparable to that which is available to its own law

16  enforcement authorities, which assistance includes taking testimony

17  or statements of persons, providing documents, records, and other

18  items, and assisting in proceedings related to immobilization and

19  forfeiture of assets, restitution, and the collection of fines.  See

20  Ex. 1, Treaty, Art. 1.  See also Barr v. U. S. Dep't of Justice, 645

21  F. Supp. 235, 237 (E.D.N.Y. 1986), aff'd, 819 F.2d 25 (2d Cir. 1987).

22    The Treaty and 18 U.S.C. § 3512 empower federal courts to

23  execute treaty requests in order to comply with the United States'

24  treaty obligations, including through the use of compulsory measures.

25  Article 10 provides as follows:

26         If necessary, compulsory measures shall be applied to

27      execute a request for taking testimony or producing

28      documents, records, and other items in the same manner as

3

1    in criminal investigations or proceedings in the Requested

2    State.

3  Ex. 1, Treaty, Art. 10(1).  The Treaty further provides as follows:

4    The Requested State shall permit the presence, during

5    execution of a request, of persons concerned in the

6    investigation or proceeding and specified in the request

7    and shall allow such persons to propose questions to be

8    asked of the person giving testimony.

9  Ex. 1, Treaty, Art. 10(3).

10      The Treaty imposes no dual criminality requirement as a

11  precondition for providing assistance.  See generally Ex. 1, Treaty,

12  Art. 1(4).  Consequently, each state is obligated to provide

13  assistance without regard to whether the conduct under investigation

14  or prosecution would constitute an offence under the laws of the

15  Requested State.  See Ex. 1, Letter of Submittal of Treaty to the

16  President from the Department of State, June 14, 2004.

17              2.   **Statutory Authority**

18      The Treaty is designed to be self-executing and requires no

19  implementing legislation.  See Ex. 1, Letter of Submittal of Treaty

20  to the President from the Department of State, June 14, 2004.  See

21  also In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.,

22  634 F.3d at 568.  However, because the procedural provisions in many

23  treaties are minimal, in the past, federal courts routinely utilized

24  procedures authorized by 28 U.S.C. § 1782 (the "commissioner"

25  process) to execute treaty requests from foreign authorities.  Id.

26  Substantive federal law regarding searches, seizures, and other

27  compulsory processes further grounded the execution of such

28  assistance requests.

On October 19, 2009, the President signed the Foreign Evidence Request Efficiency Act of 2009, Pub. Law No. 111-79, 123 Stat. 2086, which enacted 18 U.S.C. § 3512.  Section 3512 explicitly authorizes a federal court to:

> issue such orders as may be necessary to execute a request
> from a foreign authority for assistance in the
> investigation or prosecution of criminal offenses, or in
> proceedings related to the prosecution of criminal
> offenses, including proceedings regarding forfeiture,
> sentencing, and restitution.

Section 3512 directly empowers federal courts to execute such requests and separately codifies under Title 18 the longstanding practice and procedures employed by the United States and the federal courts to execute requests by foreign authorities for assistance to the fullest extent possible under United States law.  Congress enacted Section 3512 to make it "easier for the United States to respond to these requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme."  155 Cong. Rec. S6807-01 (2009) (Statement of Sen. Whitehouse).

**B.   EXECUTION OF FOREIGN REQUESTS FOR ASSISTANCE UNDER THE TREATY AND SECTION 3512**

**1.   Authorization of the Application to this Court**

Section 3512 provides,

> Upon application, duly authorized by an appropriate
> official of the Department of Justice, of an Attorney for
> the Government, a Federal judge may issue such orders as
> may be necessary to execute a request from a foreign

5

authority for assistance in the investigation and
prosecution of criminal offenses, or in proceedings related
to the prosecution of criminal offenses, including
proceedings regarding forfeiture, sentencing and
restitution.

For purposes of Section 3512, an application is "duly authorized by
an appropriate official of the Department of Justice" when the Office
of International Affairs of the Department of Justice's Criminal
Division has reviewed and authorized the request and is executing the
request itself or has delegated the execution to another attorney for
the government.  Because of the facts and circumstances set forth in
the Request, Section 3512(c) authorizes filing the instant
application in the Central District of California.[1]  Accordingly, the
Request has been referred to this district for execution.

---

[1] 18 U.S.C. § 3512 provides, in relevant part:

(c) Filing of requests.-- Except as provided under
subsection (d), an application for execution of a request
from a foreign authority under this section may be filed--

(1) in the district in which a person who may be required
to appear resides or is located or in which the documents
or things to be produced are located;
(2) in cases in which the request seeks the appearance of
persons or production of documents or things that may be
located in multiple districts, in any one of the districts
in which such a person, documents, or things may be
located; or
(3) in any case, the district in which a related Federal
criminal investigation or prosecution is being conducted,
or in the District of Columbia.

(d) Search warrant limitation. -- An application for
execution of a request for a search warrant from a foreign
authority under this section, other than an application for
a warrant issued as provided under section 2703 of this
title, shall be filed in the district in which the place or
person to be searched is located.

2.   **Foreign Authority Seeking Assistance Within Section**
**3512 and the Treaty**

As to the "foreign authority" making the Request, Section 3512(h) provides,

> The term "foreign authority" means a foreign judicial
> authority, a foreign authority responsible for the
> investigation or prosecution of criminal offenses or for
> proceedings related to the prosecution of criminal
> offenses, or an authority designated as a competent
> authority or central authority for the purpose of making
> requests for assistance pursuant to an agreement or treaty
> with the United States regarding assistance in criminal
> matters.

In this matter the Federal Ministry of Justice is the designated Central Authority in Germany for requests made pursuant to the Treaty.  Ex. 1, Treaty, Art. 2(2).

As evidenced by the Request itself and confirmed in the authorization process and again by the undersigned, consistent with Section 3512(a)(1), the foreign authority seeks assistance in the investigation or prosecution of criminal offenses or in proceedings related to the prosecution of criminal offenses.

3.   **Authority of the Federal Courts Under Section 3512**

When enacting Section 3512, Congress intended that federal courts facilitate to the fullest extent possible the execution of requests by foreign authorities for assistance in criminal matters and endeavored to streamline and expedite the execution of such requests.  Section 3512 authorizes federal courts to issue "such orders as may be necessary to execute a request" and specifically

includes:  orders for search warrants pursuant to Federal Rule of Criminal Procedure 41; orders for stored wire or electronic communications and related evidence under 18 U.S.C. § 2703; orders for pen registers and trap and trace devices under 18 U.S.C. § 3123; orders for the provision of testimony or other statements, or the production of documents or other things, or both; and orders appointing "a person" to direct the taking of testimony/statements or the production of documents or other things, or both.  <u>See</u> 18 U.S.C. § 3512(a)(1), (2).

The assistance requested by Germany pursuant to the Treaty by the Federal Ministry of Justice in the instant Request falls squarely within that contemplated by both the Treaty and Section 3512.

C.    APPOINTMENT OF A PERSON AS COMMISSIONER TO COLLECT EVIDENCE

1.    Statutory Authorization

Section 3512(b) provides that a federal judge may "issue an order appointing a person to direct the taking of testimony or statements or of the production of documents or other things, or both."  The statute further authorizes the person appointed to issue orders requiring the appearance of a person, or the production of documents or other things, or both; administer any necessary oath; and take testimony or statements and receive documents or other things.  In keeping with past practice under 28 U.S.C. § 1782, a federal court may appoint an attorney for the government, typically a federal prosecutor, as "commissioner."

2.    Procedures for Evidence Collection

Section 3512(a) specifically empowers a federal judge to issue "such orders as may be necessary" to execute the request.  This authorization encompasses orders specifying the procedures to be used

1  to collect particular evidence, including procedures requested by the

2  foreign authority to facilitate its later use of the evidence.   In

3  executing a request made pursuant to a treaty, a court has the

4  obligation to prescribe effective and expeditious procedures designed

5  to promote the purpose of the treaty.   See In re Commissioner's

6  Subpoenas, 325 F.3d at 1305.   Nothing in Section 3512 suggests any

7  limitation on a court's power to exercise "complete discretion in

8  prescribing the procedure to be followed," as was available under 28

9  U.S.C. § 1782.   In re Letter of Request from the Crown Prosecution

10 Serv. of the U.K., 870 F.2d 686, 693 (D.C. Cir. 1989), (quoting S.

11 Rep. No. 88-1580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3789.

12 See White v. National Football League, 41 F.3d 402, 409 (8th Cir.

13 1994) (a court may issue whatever process it deems necessary to

14 facilitate disposition of a matter before it); Fed. R. Crim. P. 57(b)

15 ("A judge may regulate practice in any manner consistent with federal

16 law, these rules, and the local rules of the district.").

17              a.   Procedures Authorized by Other Statutes

18      In addition, Section 3512 references specific federal laws for

19 obtaining certain evidence and, by doing so, adopts any statutorily

20 mandated procedures in relation to obtaining orders for search

21 warrants; orders for contents of stored wire or electronic

22 communications or for records related thereto; and orders for a pen

23 register or a trap and trace device.

24              b.   Orders by the Person Appointed; Commissioner

25                   Subpoenas

26      Section 3512 authorizes the "person" appointed (here, and in

27 past practice under 28 U.S.C. § 1782, the "commissioner") to issue

28 orders "requiring the appearance of a person, or the production of

                              9

1   documents or other things or both."  Further, Article 10(1) of the

2   Treaty implicitly provides for the issuance of procedural documents,

3   such as subpoenas, to gather evidence by authorizing "compulsory

4   measures . . . to execute a request for taking testimony or producing

5   documents, records, and other items in the same manner as in criminal

6   investigations or proceedings in the Requested State."

7          The commissioner may issue a "commissioner's subpoena," to

8   obtain the requested evidence.  See In re Commissioner's Subpoenas,

9   325 F.3d at 1291 (incorporating in pertinent part a district court's

10  order directing use of commissioner's subpoenas); In re Erato, 2 F.3d

11  at 13-14 (same).  Section 3512 expressly authorizes the service and

12  enforcement of such orders, or commissioner's subpoenas, anywhere in

13  the United States (i.e., coextensive with the service of subpoenas in

14  U.S. criminal investigations and prosecutions).

15                    c.   Notice of Evidence Taking

16         As an initial matter, this application is being made ex parte,

17  consistent with the practice of the United States in its domestic

18  criminal matters and its prior practice on behalf of foreign

19  authorities under 28 U.S.C. § 1782.  In re Letter of Request from the

20  Crown Prosecution Serv. of the U.K., 870 F.2d at 688; In re Letters

21  Rogatory from the Tokyo Dist., Tokyo, Japan, 539 F.2d 1216, 1219 (9th

22  Cir. 1976).  The Treaty itself contemplates the need for

23  confidentiality with respect to all aspects of the execution of

24  requests.  See Ex. 1, Treaty, Art. 5(5).  In this case, Germany has

25  not requested that the United States treat its request and the

26  execution of its request as confidential.

27         Both Section 3512 and the Treaty at Article 10(1) authorize use

28  of compulsory process in the execution of treaty requests comparable

                                    10

1  or similar to that used in domestic criminal investigations or
2  prosecutions.  Because subpoenas utilized in U.S. criminal
3  proceedings (i.e., grand jury and criminal trial subpoenas) are
4  issued without notice to any party other than the recipients (i.e.,
5  no notice to targets or defendants), orders and commissioner's
6  subpoenas issued in execution of treaty requests pursuant to Section
7  3512 and the applicable treaty likewise should require no notice
8  other than to the recipients.  In the absence of a specific request
9  to provide notice, a district court and United States authorities can
10 assume that a requesting foreign authority has provided such notice
11 as the foreign law requires, or that foreign law does not require
12 notice and the requesting foreign authority does not consider notice
13 to be necessary or useful.  Accordingly, a federal district court
14 should authorize a commissioner to collect the evidence requested
15 without notice to any party other than the recipient of the
16 commissioner's subpoena except to the extent that a request asks for
17 specific notice procedures.
18              **d.    Right to Financial Privacy Act**
19      The Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq.,
20 does not apply to execution of foreign legal assistance requests.
21 Young v. U.S. Dep't. of Justice, 882 F.2d 633, 639 (2d Cir. 1989); In
22 re Letter of Request for Judicial Assistance from the Tribunal Civil
23 de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D.
24 Fla. 1987); In re Letters of Request from the Supreme Court of Hong
25 Kong, 821 F. Supp. 204, 211 (S.D.N.Y. 1993).  Consequently, to the
26 extent that execution of a request entails production of bank or
27 financial records, notice provisions of the Act do not apply, and the
28

                                11

commissioner need not give, nor arrange for the custodian of records to give, notice to an account holder.[2]

## III. CONCLUSION

For the reasons stated above, the United States respectfully requests that this Court issue an order in the form lodged separately herewith appointing Assistant United States Attorney John J. Lulejian as a Commissioner to execute portions of the Request, and authorizing said Commissioner to take such actions as are necessary to comply with the Request, including the issuance of compulsory process in the form of Commissioner's orders or subpoenas, the administration of oaths to witnesses, and the taking of sworn testimony.

---

[2] The Act itself applies only to accounts maintained in a person's name and not to corporate, perhaps even partnership, accounts.  United States v. Daccarett, 6 F.3d 37, 50-52 (2d Cir. 1993).

# EXHIBIT 1

| 108TH CONGRESS 2d Session | SENATE | TREATY DOC. 108–27 |
| --- | --- | --- |

# MUTUAL LEGAL ASSISTANCE TREATY WITH GERMANY

_____

## MESSAGE

FROM

# THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

TREATY BETWEEN THE UNITED STATES OF AMERICA AND THE FEDERAL REPUBLIC OF GERMANY ON MUTUAL LEGAL ASSIST-ANCE IN CRIMINAL MATTERS, SIGNED AT WASHINGTON ON OC-TOBER 14, 2003; AND A RELATED EXCHANGE OF NOTES



NOVEMBER 16, 2004.—Treaty was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

_____

U.S. GOVERNMENT PRINTING OFFICE

39–118                    WASHINGTON : 2004

## LETTER OF TRANSMITTAL

---

THE WHITE HOUSE, *November 16, 2004.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Treaty Between the United States of America and the Federal Republic of Germany on Mutual Legal Assistance in Criminal Matters, signed at Washington on October 14, 2003, and a related exchange of notes. I transmit also, for the information of the Senate, the report of the Department of State with respect to the Treaty.

The Treaty is one of a series of modern mutual legal assistance treaties being negotiated by the United States in order to counter criminal activities more effectively. The Treaty should be an effective tool to assist in the prosecution of a wide variety of crimes. The Treaty is self-executing.

The Treaty provides for a broad range of cooperation in criminal matters. Mutual assistance available under the Treaty includes: taking the testimony or statements of persons; providing documents, records, and articles of evidence; locating or identifying persons; serving documents; transferring persons in custody for testimony or other purposes; executing requests for searches and seizures; undertaking telecommunications surveillance, undercover investigations, and controlled deliveries; assisting in proceedings related to immobilization and forfeiture of assets, restitution to the victims of crime and collection of fines; and any other form of assistance not prohibited by the laws of the State from whom the assistance is requested.

I recommend that the Senate give early and favorable consideration to the Treaty, and give its advice and consent to ratification.

GEORGE W. BUSH.

# LETTER OF SUBMITTAL

-------

DEPARTMENT OF STATE,
*June 14, 2004.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you the Treaty Between the United States of America and the Federal Republic of Germany on Mutual Legal Assistance in Criminal Matters ("the Treaty"), signed at Washington on October 14, 2003, and a related exchange of notes. I recommend that the Treaty and exchange of notes be transmitted to the Senate for its advice and consent to ratification.

The Treaty covers mutual legal assistance in criminal matters. In recent years, similar bilateral treaties have entered into force between the United States and a number of other countries. This Treaty contains many provisions similar to those other treaties and all by the essential provisions sought by the United States. It is accompanied by an exchange of notes which relates to Articles 9, 10, and 11 of the Treaty and which forms an integral part of the Treaty. The Treaty will enhance our ability to investigate and prosecute a variety of offenses. The Treaty is designed to be self-executing and will not require implementing legislation.

Article 1 sets out the scope of assistance available under the Treaty. The Parties shall afford assistance in criminal investigations and proceedings, which, in the case of Germany, include those relating to regulatory offenses under antitrust law. Assistance also shall be granted for investigations and proceedings relating to regulatory offenses as a whole, to the extent they may lead to court proceedings or may be referred for criminal prosecution in the Requesting State and would constitute criminal offenses in the Requested State. This will enable assistance for investigations by, for example, the Securities and Exchange Commission or the Federal Trade Commission.

Article 1(2) contains a non-exhaustive list of the major types of assistance to be provided under the Treaty, including taking the testimony or statements of persons; providing items; locating or identifying persons; serving documents; transferring persons in custody for testimony or other purposes; executing requests for searches and seizures; undertaking special investigative techniques, such as telecommunications surveillance, undercover investigations, and controlled deliveries; assisting in proceedings related to immobilization and forfeiture of assets; assisting in proceedings related to restitution to the victims of crime and collection of fines; and any other form of assistance not prohibited by the laws of the Requested State. This is the first U.S. bilateral MLAT to include

(V)

VI

special investigative techniques among permissible types of assistance.

Paragraph 3 establishes that requests may be initiated or executed by any competent authority designated in the Appendix to the Treaty. For both countries, state as well as federal officials are listed as competent authorities.

Article 1(4) provides that assistance does not depend upon whether the conduct that is the subject of the criminal investigation or proceeding in the Requesting State also would constitute a criminal or regulatory offense under the laws of the Requested State, except in limited circumstances addressed separately in the Treaty (*e.g.*, search and seizure under Article 11).

Paragraph 5 states that a request under the Treaty is necessary in investigations or proceedings involving compulsory process in the other State. Where denial of a request or delay in responding to it may jeopardize the success of the investigation or proceeding in the Requesting State, the Parties are obliged to consult in an effort to achieve a satisfactory result, but if, after 40 days from the commencement of such consultations, no such result is reached, then the Parties' obligations under the Treaty are deemed fulfilled, and other, non-treaty-based measures may be pursued.

Article 1(6) states explicitly that the Treaty does not create a right on the part of any private person to obtain, suppress or exclude any evidence, or to impede the execution of a request. Paragraph 7 extends Treaty coverage to criminal investigations and proceedings related to foreign exchange matters only to the extent subsequently agreed between the Parties.

Article 2 provides for the designation of Central Authorities and identifies who will fulfill this responsibility. For the United States, the Central Authority is the Attorney General or a person designated by the Attorney General. For the Federal Republic of Germany, the Central Authority is the Federal Ministry of Justice. The article provides that the Central Authorities are to communicate directly with one another for the purposes of the Treaty. However, in cases of urgency, the German Federal Cartel Office or a German state Ministry of Justice may communicate directly with the U.S. Department of Justice.

Article 3 sets forth the circumstances under which a Requested State's Central Authority may deny assistance under the Treaty. A request may be denied if its execution would prejudice the security or other essential public interests of the Requested State. During the course of negotiations, Germany indicated that it would review on a case-by-case basis whether to deny assistance to a capital prosecution in the United States. Several other countries with which the United States has concluded MLATs in recent years, including Australia, Austria and Luxembourg, have taken a similar position.

Article 4 obligates the Requested State to effect service of any document transmitted to it for this purpose by the Requesting State, provided that it is received at least one month before the scheduled court appearance of the person to be served. Proof of service is to be provided by means of a receipt or an official declaration. A person who is not a national of the Requesting State,

VII

and who does not answer a summons served upon him or her, is not subject to penalty or other coercive measures.

Article 5 provides a mechanism for a Requesting State to extend an invitation to a witness or expert located in the Requested State to appear at a proceeding outside the latter's territory. The Requesting State mut indicate the extent to which the person's expenses will be paid.

Article 6 addresses safe conduct. A witness or expert appearing in the Requesting State pursuant to a Treaty request may not be subjected to suit or detained with respect to acts that preceded departure from the Requested State. A person who appears to answer for acts forming the subject of a criminal proceeding is similarly not subject to suit or detention except to the extent specified in the summons. In both cases, safe conduct ceases 15 days after the appearance, if the person has not left the Requesting State or returns to it.

Article 7 provides for the temporary transfer of a person in custody in the Requested State to the Requesting State for purposes of assistance under the Treaty (for example, a witness incarcerated in the Requested State may be transferred to the Requesting State to have his testimony taken in the presence of the defendant), unless the person in question does not consent or there are overriding grounds for non-transfer. Article 7(4) further establishes both the express authority and the obligation of the receiving State to keep the person transferred in custody unless otherwise authorized by the sending State. The person transferred must be returned to the custody of the sending State as soon as circumstances permit or as otherwise agreed by the Central Authorities, and the sending State is not required to initiate extradition proceedings for the return of the person transferred. The person transferred also receives credit for time served in the custody of the receiving State.

Article 8 provides that the Requested State may authorize the transit through its territory of a person whose appearance in a criminal investigation or proceeding has been sought by the Requesting State, and obliges the Requested State to keep the person in custody during such transit.

Article 9 requires the Requested State to provide the Requesting State with copies of publicly available records in the possession of its government offices and agencies. The Requested State may also provide copies of records in the possession of a government office or agency, but not publicly available, to the same extent and under the same conditions as it would provide them to its own law enforcement or judicial authorities. The Requested State has the discretion to deny requests for such non public documents, entirely or in part.

Article 9 also provides that records provided shall be authenticated either under the provisions of the 1961 Hague Convention Abolishing the Requirement of Legalization for Foreign Public Documents or by an attestation of authenticity done by the official responsible for maintaining the records. Alternatively, the official may certify the absence or nonexistence of such records. Such authentications and certifications, if they follow the forms contained in the exchange of notes to the Treaty, are admissible in evidence

VIII

in the Requesting State as proof of the truth of the matters they address.

Article 10 states that, insofar as the laws of the Requested State allow, a person in the Requested State from whom testimony or evidence is requested shall be compelled, if necessary, to appear and testify or produce documents, records, information and other items. The Requesting State may request that evidence be given under oath, and the giving of false testimony is to be subject to prosecution under the laws of the Requested State.

Article 10(3) further requires the Requested State to permit persons specified in the request (such as the accused, counsel for the accused, or other interested persons) to be present during execution of the request and to allow them to propose questions to be asked of the person giving the testimony or evidence. In the event that a person whose testimony or evidence is being taken in the Requested State asserts a claim of immunity, incapacity, or privilege under the laws of the Requesting State, Article 10(5) provides for the Requesting State to be consulted as to the validity of the claim.

Finally, in order to ensure admissibility in evidence in the Requesting State, Article 10(6) provides a mechanism for authenticating, by means of an attestation, evidence that is produced pursuant to or that is the subject of testimony taken in the Requested State. Such attestations are to be certified in accordance with procedures specified in the request, which, in the case of business records, may include a certificate or protocol. Evidence so authenticated is admissible in the Requesting State as proof of the truth of the matter it addresses. As noted above in connection with Article 9, the Governments have exchanged diplomatic notes setting out agreed forms to be relied upon for this purpose.

Article 11 provides that the Requested State shall execute a request for search and seizure of any item, if the offense is punishable criminally (or by a regulatory fine under German law) under the laws of both States, if information is supplied to the Requested State justifying such action under its laws, and if the Requesting State documents that compulsory production or seizure also could be obtained under its laws. This Article further creates a mechanism for certifying, through the use of procedures specified in the request, the identity of the item and its chain of custody. A form set out in the exchange of diplomatic notes may be utilized for this purpose. Certifications following these procedures are admissible as proof of the chain of custody in the Requesting State.

Article 12 identifies three types of special investigative techniques which may be utilized by the Parties, within their possibilities and under the conditions prescribed by domestic law. These are: telecommunications surveillance, undercover investigations, and controlled deliveries. This MLAT marks the first occasion where such techniques have been specifically recognized by the United States as types of mutual legal assistance. The provision was included at the request of the Federal Republic of Germany.

Article 13(1) provides that, if the Central Authority of one Party becomes aware that proceeds or instrumentalities of offenses that may be forfeitable or otherwise subject to seizure are located in the other Party, it may so inform the Central Authority of the other Party. If the Party receiving such information has jurisdiction, it

IX

may present this information to its authorities for a determination whether any action is appropriate. The Central Authority of the Party receiving such information is required to inform the Central Authority of the Party that provided the information of any action taken.

Article 13(2) obligates the Parties to assist each other to the extent permitted by their respective laws in proceedings relating to the forfeiture of the proceeds and instrumentalities of offenses, restitution to victims of crime, and collection of fines imposed as sentences in criminal prosecutions. This may include action to temporarily immobilize proceeds or instrumentalities. Under Article 13(3), the Party having custody over proceeds or instrumentalities of offenses is required to dispose of them in accordance with its laws, including the possibility of transferring assets or proceeds to the other Party.

Article 14 requires the Requested State, if so requested by the Central Authority of the Requesting State, to use its best efforts to keep confidential a request and its contents. The Central Authority of the Requested State must inform the Requesting State's Central Authority if the request cannot be executed without breaching such confidentiality. This provides the Requesting State an opportunity to decide whether to pursue the request or to withdraw it in order to maintain confidentiality.

This article also enables the Requested State's Central Authority to request that evidence or information it furnishes under the Treaty be kept confidential or used only subject to specified conditions. If evidence or information is made subject to conditions, the Requesting State shall use its best efforts to honor them.

Article 15 addresses conditions in detail. Where the Requested State could refuse assistance but instead offers it subject to conditions that are accepted by the Requesting State, the latter is bound to comply with the conditions. This Article also requires the Requesting State not to use information or evidence obtained under the Treaty for any purposes other than those for which it was sought and granted, other than exceptions specified in paragraph 3, without the prior consent of the Requested State.

The circumstances under which evidence or information generally may be used without prior consent are: for other purposes within the scope of assistance under the Treaty; for prevention of a serious criminal offense; in non-criminal judicial or administrative proceedings related to criminal matters; and to avert substantial danger to public security. A Requested State may, however, specifically exclude use for one of these purposes in a particular case.

Article 15(4) permits a Requesting State to disclose to a defendant in a criminal proceeding evidence that may be exculpatory or that relates to the truth and veracity of a prosecution witness. The Requesting State is obliged to notify the Requested State in advance of any such proposed disclosure. In addition, Article 15(5) permits the use of information for any purpose once it has been made public in the normal course of a criminal proceeding in the Requesting State.

Article 16 provides a special rule for ensuring confidentiality in the Requesting State of information or evidence received in connec-

x

tion with an antitrust investigation or proceeding. Such informa-
tion is to receive the same degree of protection as evidence ob-
tained in the Requesting State itself, may be disclosed only to per-
sons or authorities competent for prosecuting antitrust offenses,
and may be used only in public court proceedings or judicial deci-
sions, absent consent to broader use.

Article 17 prescribes the form and content of written requests
under the Treaty, specifying in detail the information required in
each request. A request for assistance must be in writing, except
that a request may be accepted in another form in urgent situa-
tions. Requests not in writing require written confirmation within
ten days unless the Central Authority of the Requested State
agrees otherwise.

Article 18 stipulates that requests may be made in the language
of either Party, but, if made in the language of the Requesting
State, shall be accompanied by a translation into the language of
the Requested State. Translations of documents in the other Par-
ty's language also are required, unless otherwise agreed.

Article 19 concerns execution of requests. A Requested State
shall execute a request in accordance with its own criminal law
and criminal procedure law except to the extent the Treaty pro-
vides otherwise. This obligation is to be construed with a view to
fulfilling the overall objective of the Treaty of promoting coopera-
tion, as recently illustrated in the case of *In re Commissioner's
Subpoenas*, 325 F. 3d 1287 (11th Cir. 2003). In addition, a Re-
quested State must honor requests for use of specific procedures
unless prohibited under its criminal procedure law. The Requested
State's Central Authority shall ensure that the request either is ex-
ecuted or transmitted to the authority having jurisdiction to do so.
The competent authorities of the Requested State must do every-
thing in their power to execute a request, and its courts shall have
authority to issue needed orders, including search warrants.

Requests are to be executed as soon as possible. However, Article
19(5) permits the Requested State to seek additional information
necessary to execute the request. In addition, if the Requested
State determines that execution of a request would interfere with
an ongoing criminal investigation or proceeding in that State, it
may postpone execution or make execution subject to conditions de-
termined to be necessary after consultations with the Central Au-
thority of the Requesting State. If the Requesting State accepts as-
sistance subject to conditions, it must comply with them.

Article 20 provides that the Requesting State shall return any
item provided in response to a request, unless return is waived,
and that the Central Authority of the Requested State may require
its counterpart in the Requesting State to protect third party inter-
ests in a transferred item.

Article 21 apportions between the two States the costs incurred
in executing a request. It provides that the Requested State must
pay all expenses and fees relating to the execution of a request, ex-
cept for those relating to expert services; translation, interpretation
and transcription; travel of witnesses or experts outside the Re-
quested State pursuant to Article 5 or inside the Requested State
pursuant to Article 10; and the transfer of a person in custody out-
side the Requested State pursuant to Article 7. The article further

XI

provides that, in the event a request entails extraordinary expenses, consultation between the Central Authorities shall occur in order to determine the terms and conditions for continuing execution.

Article 22 authorizes transfer of a matter to the other Party for consideration of possible criminal investigation or prosecution. The receiving Party is obliged to notify the referring Party of the ultimate disposition of the matter.

Article 23 clarifies that, as a general matter, documents and records transmitted in response to a request do not require certification, authentication or other legalization except to the extent specified in the Treaty.

Article 24 provides that the Central Authorities shall consult, at times mutually agreed, to promote the most effective use of the Treaty, and may agree upon practical measures to facilitate the Treaty's implementation.

Article 25 makes clear that assistance and procedures under the Treaty are non-exclusive; other applicable international agreements, arrangements, or provisions of domestic law may be utilized instead. Under Article 25(2), assistance may be refused for a tax offense if the Requested State regards the offense as being based either on taxation in the Requesting State that is contrary to the provisions of any double tax convention to which both States are party, or, in the case of taxes not covered by any such convention, on taxation that is contrary to the fundamental principles of taxation. Finally, Article 25(3) clarifies that police authorities conducting criminal investigations may request assistance directly from the other State's police authorities. Such requests by U.S. police authorities are to be addressed to Germany's Federal Criminal Police Office (BKA).

Article 26 provides that the Treaty is subject to ratification and that the instruments of ratification are to be exchanged as soon as possible. The Treaty then enters into force thirty days after the exchange of instruments. Article 26(3) provides that either State may terminate the Treaty by written notice to the other State, termination to be effective one year after the date of such notice.

The Department of Justice joins the Department of State in favoring approval of this Treaty by the Senate as soon as possible.

Respectfully submitted,

COLIN L. POWELL.

Treaty

between

the United States of America

and

the Federal Republic of Germany

on

Mutual Legal Assistance in Criminal Matters

(1)

2

- 2 -

TABLE OF CONTENTS

Article 1 ...................................................................................Obligation
Article 2 .........................................................................Central Authorities
Article 3 ...................................................................................Refusal
Article 4 ...........................................................................Serving Documents
Article 5 ......................................................................Witnesses and Experts
Article 6.............................................................................Safe Conduct
Article 7 ..................................................................Transferring Persons in Custody
Article 8 ...................................................................Transit of Persons in Custody
Article 9 ........................................................................Providing Official Records
Article 10 ............................................................Taking Testimony and Producing Evidence
Article 11 .......................................................................Search and Seizure
Article 12 ..................................................................Special Investigative Techniques
Article 13 .............................................................Assistance in Forfeiture Proceedings
Article 14 ..........................................................................Confidentiality
Article 15 ..............................................................................Conditions
Article 16 .........................................Information and Evidence in Antitrust Proceedings
................................................................................and Investigations
Article 17.................................................................Contents and Form of Requests
Article 18 ......................................................................Language to be Used
Article 19 ....................................................................Execution of Requests
Article 20 ..........................................................................Return of Items
Article 21 ..............................................................................Expenses
Article 22 ................................................Referral for Investigation or Prosecution
Article 23 ..........................................................................Certification
Article 24 .........................................................................Consultations
Article 25 ......................................................................Other Agreements
Article 26 ............................................Ratification, Entry Into Force, and Termination
Appendix ......................................................................Competent Authorities

3

- 3 -

The United States of America

and

the Federal Republic of Germany,

desiring to provide for more effective cooperation between the two States in the repression of crime and, specifically, to facilitate the relations between the two States in the area of mutual legal assistance in criminal matters -,

have agreed as follows:

Article 1

Obligation

(1)    The Parties undertake to afford each other, through their competent authorities, the widest measure of mutual assistance in criminal investigations and proceedings, including those relating to customs, duties and taxes, in accordance with the provisions of this Treaty. Criminal investigations or proceedings for the purpose of this Treaty include investigations or proceedings relating to regulatory offenses (Ordnungswidrigkeiten) under German antitrust law. Criminal investigations and proceedings for the purpose of this Treaty also include investigations and proceedings relating to regulatory offenses to the extent that they may lead to court proceedings or be referred for criminal prosecution in the Requesting State and would constitute criminal offenses in the Requested State.

(2)    Assistance shall include:

    1. locating or identifying persons or items;

    2. serving documents;

4

- 4 -

3. taking the testimony or statements of persons;

4. transferring persons in custody for testimony or other purposes;

5. providing documents, records, and other items;

6. executing searches and seizures;

7. special investigative techniques such as: telecommunications surveillance, undercover investigations, and controlled deliveries;

8. assisting in proceedings related to immobilization and forfeiture of assets, restitution, collection of fines; and

9. any other form of assistance not prohibited by the laws of the Requested State.

(3)    The term "competent authority" means any authority that under the law or practice of a Party is authorized to request assistance in criminal investigations or proceedings or to order the execution of or to execute requests for assistance in criminal investigations or proceedings. The competent authorities for the respective Parties are listed in the Appendix to this Treaty. The Appendix shall form part of this Treaty. Either Party may amend its listing of competent authorities by exchange of notes through the diplomatic channel.

(4)    Assistance shall be provided without regard to whether the conduct that is the subject of the criminal investigation or proceeding in the Requesting State would constitute a criminal or regulatory offense under the laws of the Requested State unless otherwise provided in this Treaty.

(5)    A Party shall request assistance pursuant to the provisions of this Treaty to obtain, through the use of compulsory measures or search and seizure, documents, records, and other items located in the territory of the other Party and needed in connection with a criminal investigation or proceeding within the scope of this Treaty. Where denial of a request or

5

- 5 -

undue delay of its execution may jeopardize the success of the criminal investigation or proceeding, the Central Authorities shall promptly consult with a view to achieving a mutually acceptable result. If, after 40 days from the commencement of such consultations, a satisfactory resolution is not reached, the Parties' obligations under the Treaty shall be deemed to have been fulfilled.

(6)   The provisions of this Treaty shall not give rise to a right on the part of a private party to take any action in a proceeding to obtain, suppress, or exclude any evidence, or to impede the execution of a request. Rights existing independently of this Treaty, however, are not affected.

(7)   This Treaty shall apply to criminal investigations and proceedings related to foreign exchange only insofar as agreed upon between the Parties by exchange of notes through the diplomatic channel.

Article 2
Central Authorities

(1)   Each Party shall designate a Central Authority to make and receive requests pursuant to this Treaty.

(2)   For the United States of America, the Central Authority shall be the Attorney General or a person designated by the Attorney General. For the Federal Republic of Germany, the Central Authority shall be the Federal Ministry of Justice.

(3)   The Central Authorities shall communicate directly with one another for the purposes of this Treaty.

(4)   In instances of urgency, requests may be directly communicated between the Ministries of Justice of the Laender or the Federal Cartel Office of the Federal Republic of Germany and the Central Authority for the United States.

6

- 6 -

### Article 3
### Refusal

Assistance may be denied if execution of the request would prejudice the sovereignty, security, or other essential interests of the Requested State.

### Article 4
### Serving Documents

(1)  The Requested State shall effect service of any document transmitted to it for this purpose by the Requesting State.

(2)  Except in instances of urgency, a request for the service of a document requiring the appearance of a person shall be executed only if it is received by the Requested State not later than one month before the scheduled appearance of the person to be served.

(3)  Proof of service shall be by a receipt dated and signed by the person served or by an official declaration stating the form and date of such service.

(4)  A person who is not a national or resident of the Requesting State and who does not answer a summons to appear in the Requesting State served pursuant to a request shall not by reason thereof be liable to any penalty or be subjected to any coercive measures.

### Article 5
### Witnesses and Experts

(1)  When the Requesting State requests that a person located in the Requested State appear outside the Requested State, the Requested State shall invite the person to so appear. The Central Authority of the Requested State shall promptly inform the Central Authority of the Requesting State of the person's response.

7

- 7 -

(2)   The Requesting State shall indicate the extent to which the person's expenses will be paid. A person who agrees to appear may obtain advance money from the Requesting State to cover these expenses.

## Article 6
### Safe Conduct

(1)   Unless otherwise specified in the request, a person appearing as a witness or expert in the Requesting State pursuant to a request shall not be subject to suit, or be detained or subjected to any other restriction of personal liberty, with respect to any act or conviction that preceded departure from the Requested State.

(2)   A person appearing in the Requesting State pursuant to a request to answer for acts forming the subject of criminal proceedings against that person shall not be subject to suit, or be detained or subjected to any other restriction of personal liberty, for any act or conviction that preceded departure from the Requested State and was not specified in the summons.

(3)   Safe conduct as provided for in paragraphs (1) and (2) shall cease if, 15 days after the person appearing has been notified that the person's presence is no longer required, that person, being free to leave, has not left the Requesting State or, having left, has returned.

## Article 7
### Transferring Persons in Custody

(1)   A person in custody in the Requested State whose presence outside that State is sought for purposes of assistance under this Treaty shall be transferred for such purposes.

(2)   A person in custody in the Requesting State whose presence in the Requested State is sought for purposes of assistance under this Treaty shall be transferred from the Requesting State to the Requested State.

8

- 8 -

(3)   Transfer shall not be granted if:

   1. the person in custody does not consent; or

   2. there are overriding grounds for not transferring the person.

(4)   For purposes of this Article:

   1. the receiving State shall have the authority and the obligation to keep the person transferred in custody unless otherwise authorized by the sending State;

   2. the receiving State shall return the person transferred to the custody of the sending State as soon as circumstances permit or as otherwise agreed;

   3. the receiving State shall not require the sending State to initiate extradition or any other proceedings for the return of the person transferred;

   4. time served in the custody of the receiving State by the person transferred shall be credited toward the service of the sentence imposed in the sending State; and

   5. where the receiving State is a third State, the Requesting State shall be responsible for all arrangements necessary to meet the requirements of this Article, including obtaining the third State's consent.

Article 8

Transit of Persons in Custody

(1)   The Requested State may authorize the transit through its territory of a person held in custody by the Requesting State or by a third State whose presence has been requested by the Requesting State to provide assistance in a criminal investigation or proceeding.

9

- 9 -

(2)   The Requested State shall have the authority and the obligation to keep the person in custody during transit.

Article 9
Providing Official Records

(1)   The Requested State shall provide any publicly available record, including documents or information in any form, in the possession of a government office or agency.

(2)   The Requested State may provide any record, including documents or information in any form in the possession of a government office or agency, but not publicly available, to the same extent and under the same conditions as such record would be available to its own corresponding authorities.

(3)   The Requested State may transmit certified copies of records requested unless the Requesting State expressly requests the transmission of originals, in which instance the Requested State shall comply with the request to the extent possible.

(4)   Article 11, paragraph (1), shall not apply to the provision of records or copies thereof under this Article.

(5)   Records or copies provided pursuant to this Article shall, upon request, be authenticated under the provisions of the Convention Abolishing the Requirement of Legalization for Foreign Public Documents, dated 5 October 1961, or by the official responsible for maintaining them through the use of an attestation of authenticity of official records in accordance with the procedures specified in the request. The absence or nonexistence of such records shall, upon request, be certified by an official responsible for maintaining them in accordance with the procedures specified in the request. Records or copies authenticated under this paragraph, or a certification of the absence or nonexistence of such records, shall be admissible in evidence in the Requesting State as proof of the truth of the matters set forth therein.

10

~ 10 ~

Article 10

Taking Testimony and Producing Evidence

(1)    If necessary, compulsory measures shall be applied to execute a request for taking testimony or producing documents, records, and other items in the same manner as in criminal investigations or proceedings in the Requested State.

(2)    If the Requesting State desires witnesses or experts to give evidence under oath, it shall expressly so request. A person who gives false testimony in execution of a request shall be subject to prosecution in the Requested State in accordance with the criminal laws of that State.

(3)    The Requested State shall permit the presence, during execution of a request, of persons concerned in the investigation or proceeding and specified in the request and shall allow such persons to propose questions to be asked of the person giving the testimony. The persons present shall be permitted to make a verbatim transcript of the proceedings.

(4)    Audio-visual means shall be permitted to record testimony with the consent of the person giving testimony.

(5)    If the person concerned asserts a claim of immunity, incapacity, or privilege under the law of the Requested State that is not mentioned in the request, the Requested State may ask the Requesting State for a declaration as to the validity of the claim. If the Requesting State does not confirm the validity of the claim, the evidence shall be taken without prejudice to the resolution of the claim in the Requesting State.

(6)    Evidence produced in the Requested State pursuant to this Article or the subject of testimony taken under this Article shall, upon request, be authenticated by an attestation. The absence or nonexistence of such evidence shall, upon request, be certified by an attestation. These attestations shall be certified in accordance with procedures specified in the request. Where such items are business records, the attestation may be by a certificate, a protocol or other document containing the essential information required by the Requesting State.

11

- 11 -

Evidence, especially business records, so authenticated, or certifications of the absence or nonexistence of such records, shall be admissible in evidence in the Requesting State as proof of the truth of the matters set forth therein.

### Article 11
#### Search and Seizure

(1)   The Requested State shall execute a request for the search, seizure, and transfer of any item to the Requesting State if:

    1.  the type of offense upon which the request is based is punishable criminally (or by a regulatory fine under German law) under the laws of both the Requesting and the Requested State;

    2.  the request includes information justifying such action under the laws of the Requested State; and

    3.  an order for seizure by a competent authority or a statement by the Central Authority of the Requesting State is attached to or included as part of the request showing that compulsory production or seizure could be obtained if the item were located in the Requesting State.

(2)   For the purpose of paragraph 1, an offense shall be considered to be a type punishable under the laws of the Federal Republic of Germany without regard to elements of the offense under the law of the United States designed for the purpose of granting jurisdiction to the United States Government, such as interstate or foreign transportation of persons and property, use of mails or other means of communication, or use of other means of carrying out interstate or foreign commerce.

(3)   Upon request, every official in the Requested State who has custody of a seized item shall certify, through the use of procedures specified in the request, the identity of the item,

12

- 12 -

the continuity of custody, and any changes in condition. Certifications using the procedures specified in the treaty shall be admissible in the Requesting State as proof of the truth of the matters set forth therein.

### Article 12
#### Special Investigative Techniques

Each Party may at the request of the other Party, within its possibilities and under the conditions prescribed by its domestic law,

1. take the necessary steps for the surveillance of telecommunications,

2. permit the operation in its territory of criminal investigations by law enforcement officers of the other Party acting under covert or false identity, and

3. permit controlled deliveries in its territory in connection with criminal investigations.

### Article 13
#### Assistance in Forfeiture Proceedings

(1)   If the Central Authority of one Party becomes aware of proceeds or instrumentalities of offenses that are located in the territory of the other Party and may be forfeitable or otherwise subject to seizure under the laws of that Party, it may so inform the Central Authority of the other Party. If that other Party has jurisdiction in this regard, it may present this information to its authorities for a determination whether any action is appropriate. These authorities shall issue their decision in accordance with the laws of their country, and shall, through their Central Authority, report to the other Party on the action taken.

(2)   The Parties shall assist each other to the extent permitted by their respective laws in proceedings relating to the forfeiture of the proceeds and instrumentalities of offenses,

13

- 13 -

restitution to the victims of crime, and the collection of fines imposed as sentences in criminal prosecutions. This may include action to temporarily immobilize the proceeds or instrumentalities pending further proceedings.

(3)   The Party that has custody over proceeds or instrumentalities of offenses shall dispose of them in accordance with its laws, including the possibility of transferring all or part of such assets or the proceeds thereof to the other Party.

Article 14
Confidentiality

(1)   The Requested State shall use its best efforts to keep confidential a request and its contents if such confidentiality is requested by the Central Authority of the Requesting State because disclosure is likely to jeopardize the success of the criminal investigation or proceeding. If the request cannot be executed without breaching such confidentiality, the Central Authority of the Requested State shall so inform the Central Authority of the Requesting State, which shall then determine whether the request should nevertheless be executed.

(2)   The Central Authority of the Requested State may request that evidence or information furnished under this Treaty be kept confidential or be used only subject to terms and conditions it may specify. If the Requesting State accepts the evidence or information subject to such conditions, the Requesting State shall use its best efforts to comply with the conditions.

14

- 14 -

Article 15

Conditions

(1)    Where assistance could be refused under Article 3, the Central Authority of the Requested State shall consult with the Central Authority of the Requesting State to consider whether assistance can be given subject to such conditions as it deems necessary. If the Requesting State accepts assistance subject to these conditions, it shall comply with the conditions.

(2)    The Requesting State shall not use any evidence or information obtained under this Treaty for any other purpose than that described in the request without the prior consent of the Central Authority of the Requested State, except as specified in paragraph 3.

(3)    The Requesting State may use any evidence or information obtained under this Treaty without the prior consent of the Central Authority of the Requested State:

    1. for any other purpose for which assistance pursuant to this Treaty would be available;

    2. for preventing the commission of serious criminal offenses;

    3. in a non-criminal judicial or administrative proceeding related to a purpose specified in subparagraphs 1 and 2 above; and

    4. for averting substantial danger to public security.

However, the Central Authority of the Requested State may prohibit such use in a specific instance at the time the Requested State provides the evidence or information. In that instance, the Requesting State shall not use any evidence or information to which the prohibition applies in any investigation or proceeding other than that described in the request without the prior consent of the Central Authority of the Requested State.

15

- 15 -

(4)   Notwithstanding any limitation on disclosure contained in this Article or Article 16, the Requesting State may disclose evidence or information to a defendant in a criminal proceeding where the evidence or information may be exculpatory to the defendant or relate to the truth and veracity of a witness providing testimony against the defendant. The Requesting State shall notify the Requested State in advance of any such proposed disclosure.

(5)   Information or evidence that has been made public in the Requesting State in the normal course of the proceeding for which it was provided may thereafter be used for any purpose.

(6)   A State that furnishes evidence or information subject to a condition referred to in this Article may require the other State to explain, in relation to that condition, the use made of such evidence or information.

Article 16

Information and Evidence in Antitrust

Proceedings and Investigations

Information or evidence received by the Requesting State in connection with an investigation or proceeding under the antitrust laws, assistance as to which may be provided under this treaty, shall be treated as confidential in the same way as information or evidence obtained under its domestic law and only may be disclosed to persons or authorities, including courts or administrative authorities, competent for the prosecution of antitrust offences. Such persons or authorities shall use the information or evidence only for these purposes. They may disclose the information or evidence in public court proceedings or in judicial decisions, unless the competent authority of the Requested State supplying the information or evidence raises an objection. Such objections shall be raised only in exceptional cases. Such information or evidence shall not be used for other purposes without prior consent of the Requested State.

16

- 16 -

Article 17

Contents and Form of Requests

(1)   A request shall:

    1. identify the authority making the request;

    2. identify the authority conducting the criminal investigation or proceeding to which the request relates;

    3. describe the subject matter and nature of the criminal investigation or proceeding, including:

        a) a summary of the facts;

        b) the text of the applicable criminal law provisions; and

        c) if known, the identity of the person who is the subject of the criminal investigation or proceeding;

    4. describe the evidence or information sought or the acts to be performed; and

    5. state the purpose for which the evidence, information or action is sought.

(2)   As appropriate, and to the extent possible, a request also should include:

    1. information on the identity or description and suspected location of a person or item to be located;

- 17 -

2. information on the identity and location of a person to be served, that person's relationship to the criminal investigation or proceeding, and the manner in which service is to be made;

3. the identity and location of persons from whom evidence is sought, a description of the manner in which any testimony or statement is to be taken and recorded, and a description of the testimony or statement sought, which may include a list of questions to be answered;

4. a precise description of the place or person to be searched and the item to be seized;

5. a description of any particular procedure to be followed in executing the request;

6. information as to the allowances and expenses to which a person appearing in the requesting state will be entitled; and

7. any other information that may be brought to the attention of the Requested State to facilitate its execution of the request.

(3)   A request shall be in writing except that in urgent situations the Central Authorities may utilize another form. If the request is not in writing, it shall be confirmed in writing within ten days unless the Central Authority of the Requested State agrees otherwise.

Article 18
Language to be Used

The request may be made in the language of either the Requesting or Requested State. A request in the language of the Requesting State shall be accompanied by a translation into the language of the Requested State. Any documents attached to the request, which are not in the language of the Requested State, should be accompanied by a translation into the language of that State, unless otherwise agreed.

18

- 18 -

Article 19

Execution of Requests

(1)   The law of the Requested State governing criminal investigations or proceedings shall apply to the execution of a request except to the extent that this Treaty provides otherwise. The Requested State shall honor a request to follow a specific procedure not provided for by the Treaty unless such procedure is prohibited by the law or incompatible with the procedure of the Requested State.

(2)   If the authority that receives a request lacks competence to comply therewith, the Central Authority shall assure that the request is transmitted to the appropriate authority of the Requested State.

(3)   The appropriate authorities of the Requested State shall use all legal means within their power to assist the Requesting State before the competent judges and officers of the Requested State. The courts of the Requested State shall have authority to issue such orders, including search warrants, as are necessary to execute the request.

(4)   With respect to Articles 10 and 11, the Requested State shall, on request, give the Requesting State reasonable notice of the date and place of the execution of the request.

(5)   The Requested State shall execute a request as soon as possible.

    1. If the Requested State considers that the information furnished in support of the request is insufficient to render assistance in accordance with this Treaty, it shall request the submission of the necessary additional information.

    2. If the Requested State determines that execution of the request would interfere with an ongoing criminal investigation or proceeding in that State, it may postpone execution, or make execution subject to conditions determined to be necessary after consultations with the Central Authority of the Requesting State. If the Requesting

19

- 19 -

State accepts the assistance subject to the conditions, it shall comply with the conditions.

(6)   If execution of the request is completely or partially refused, postponed, or cannot be effected, the Central Authority of the Requested State shall promptly communicate the reasons to the Central Authority of the Requesting State.

Article 20
Return of Items

(1)   The Requesting State shall return any item provided in response to a request as soon as possible unless the Requested State waives the return thereof.

(2)   The Central Authority of the Requested State may require that the Requesting State agree to the terms and conditions deemed necessary to protect third party interests in the item to be transferred.

Article 21
Expenses

(1)   The Requested State shall pay all expenses, fees and disbursements arising from the execution of a request in that State except for those related to:

1. the services of an expert;

2. translation, interpretation, and transcription;

20

- 20 -

3. the travel and appearance of a witness or expert outside the Requested State pursuant
to Article 5 or inside the Requested State for the convenience of the Requesting State
pursuant to Article 10; and

4. the transfer of a person in custody outside the Requested State pursuant to Article 7.

(2)   If, during the execution of a request, it becomes apparent that complete execution will
entail expenses of an extraordinary nature, the Central Authorities shall consult to
determine the terms and conditions under which execution may continue.

Article 22
Referral for Investigation
or Prosecution

(1)   A Party may refer to the other Party matters for consideration for criminal investigation
or prosecution.

(2)   The referral shall be accompanied by a summary of facts and a translation thereof into
the language of the Party receiving it.

(3)     The Party receiving the referral shall notify the other Party of the disposition of the
referral and the reasons therefor.

Article 23
Certification

Except where this Treaty otherwise provides, documents and records transmitted under this
Treaty shall not require any certification, authentication, or other legalization.

21

- 21 -

### Article 24
### Consultations

The Central Authorities shall consult, at times mutually agreed to by them, to promote the most effective use of this Treaty. The Central Authorities may also agree on such practical measures as may be necessary to facilitate the implementation of this Treaty.

### Article 25
### Other Agreements

(1)   Assistance and procedures set forth in this Treaty shall not prevent either Party from granting assistance to the other through the provisions of other applicable international agreements or through the provisions of its domestic laws. The Parties may also provide assistance pursuant to any bilateral arrangement, agreement, or practice that may be applicable.

(2)   Assistance under this Treaty may be refused for a tax offense if the Requested State views the tax offence as being based

    1. on taxation in the Requesting State that is contrary to the provisions of any Convention for the avoidance of double taxation to which both States are party, or

    2. in the case of taxes not covered by any such Convention, on taxation in the Requesting State that is contrary to its fundamental principles of taxation.

(3)   The police authorities of a Party, in connection with criminal investigations within their competence, may request assistance directly from the police authorities of the other Party where such assistance relates merely to obtaining information, providing police documents or records, locating persons or questioning persons by police authorities. Requests by German police authorities shall be addressed to the appropriate competent authority in the United

22

- 22 -

States of America; requests by United States police authorities shall be addressed to the Federal Criminal Police Office of the Federal Republic of Germany.

Article 26
Ratification, Entry into Force and Termination

(1)   This Treaty shall be subject to ratification; the instruments of ratification shall be exchanged as soon as possible.

(2)   This Treaty shall enter into force 30 days after the exchange of the instruments of ratification.

(3)   This Treaty shall continue in force until the expiration of one year from the date on which written notice of termination is given by one Party to the other through the diplomatic channel. The date on which the other Party receives such notice shall be decisive.

Done at WASHINGTON   on OCTOBER 14,   2003 in duplicate in the German and English languages, both texts being equally authentic.

For the
United States of America

For the
Federal Republic of Germany

23

Appendix

to the

Treaty

between

the Federal Republic of Germany

and

the United States of America

on

Mutual Legal Assistance in Criminal Matters


The United States Department of Justice will act as the central authority for making and
receiving all requests under the Treaty for Mutual Assistance in Criminal Matters. The
following United States officials shall be competent to initiate Treaty requests, and to execute
Treaty requests made by competent authorities in the Federal Republic of Germany:


United States federal judges;


Judges of courts of the states and territories of the United States,
the Commonwealth of Puerto Rico, the Virgin Islands, and the Northern Marianas
having general criminal jurisdiction;


United States Attorneys;


Attorneys in the legal divisions of the United States Department of Justice;


Attorneys General of the states and territories of the United States,
the Commonwealth of Puerto Rico, the Virgin Islands, and the Northern Marianas;

24

- 2 -

District Attorneys in the states and territories of the United States and
the Commonwealth of Puerto Rico, the Virgin Islands, and the Northern Marianas; and

Federal, state, and local law enforcement agencies having legal authority to refer matters to
the U.S. Department of Justice for criminal prosecution.

Competent German authorities for the purposes of Article 1, paragraph 3 of the Treaty
between the Federal Republic of Germany and the United States of America on Mutual
Assistance in Criminal Matters are:

The Federal Ministry of Justice;

the Federal Ministry of Economics and Labour;

the Federal Court of Justice, Karlsruhe;

the Public Prosecutor General of the Federal Court of Justice, Karlsruhe;

the Ministry of Justice of Baden-Wuerttemberg, Stuttgart;

the Bavarian State Ministry of Justice, Munich;

the Senate Department for Justice, Berlin;

the Ministry of Justice and European Affairs of Land Brandenburg, Potsdam;

the Senator for Justice and Constitution of the Free Hanseatic City of Bremen, Bremen;

the Justice Authority of the Free and Hanseatic City of Hamburg, Hamburg;

the Hessian Ministry of Justice, Wiesbaden;

25

- 3 -

the Ministry of Justice of Mecklenburg-Vorpommern, Schwerin;

the Ministry of Justice of Lower-Saxony, Hanover;

the Ministry of Justice of Land North-Rhine/Westphalia, Duesseldorf;

the Ministry of Justice of Land Rhineland-Palatinate, Mainz;

the Ministry of Justice of the Saarland, Saarbruecken;

the Saxonian State Ministry of Justice, Dresden;

the Ministry of Justice of Land Saxony-Anhalt, Magdeburg;

the Ministry of Justice and for Women, Youth and Family Affairs of Schleswig-Holstein, Kiel;

the Thuringian Ministry of Justice, Erfurt;

the Bavarian Supreme Court, Munich;

the Higher Regional Courts;

the Regional Courts;

the Local Courts;

the Chief Public Prosecutor at the Bavarian Supreme Court, Munich;

the Chief Public Prosecutor at the Higher Regional Courts;

the Directors of Public Prosecutions at the Regional Courts;

26

- 4 -

the Central Office of the Land Judicial Administrations for the Investigation of National
Socialist Crimes, Ludwigsburg;
the Federal Criminal Police Office;

Federal Cartel Office;

the Central Office of the German Customs Investigations Service.

27

**DEPARTMENT OF STATE**
**WASHINGTON**

May 24, 2004

Excellency:

      I have the honor to refer to the Treaty between the United States of America and the Federal Republic of Germany on Mutual Legal Assistance in Criminal Matters signed at Washington on October 14, 2003, and to confirm the understanding reached between the Government of the United States of America and the Government of the Federal Republic of Germany with respect to Article 9 paragraph 5, Article 10 paragraph 6, and Article 11 paragraph 3. These three provisions state that the authenticity, existence or non-existence of documents, records and items obtained under the Treaty shall be certified in accordance with the procedures specified in the request, and, if so certified, shall be admissible in evidence as proof of the matters stated therein in accordance with the laws of the Requesting State.

      During the course of negotiations, representatives of our Governments agreed on the text of a series of forms, attached to this Note, which shall be utilized by their appropriate officials in meeting these obligations.  Each Government agreed to utilize these forms upon request, and undertook to make them known to all appropriate officials.

His Excellency
    Mr. Wolfgang Ischinger,
        Ambassador Extraordinary and Plenipotentiary
        of the Federal Republic of Germany
          to the United States of America.

**DIPLOMATIC NOTE**

28

The United States Department of Justice, Office of International Affairs, shall disseminate these forms on behalf of the United States of America to United States law enforcement authorities preparing requests under the Treaty. The Federal Ministry of Justice of the Federal Republic of Germany shall include the forms in the Guidelines for International Judicial Assistance in Criminal Matters (*Richtlinien für den Verkehr mit dem Ausland in strafrechtlichen Angelegenheiten*) used by the German authorities in executing foreign judicial assistance requests. Both Governments agree that the substance of the forms should be used as a guideline for a judicial examination in Germany in order to ensure that making a false attestation would constitute a criminal offence.

I have further the honor to propose that the present Note and Your Excellency's Note in reply confirming the foregoing understanding on behalf of the Federal Republic of Germany shall be regarded as constituting an agreement between the two Governments, which shall enter into force on the same day when the Treaty enters into force.

This Agreement shall consist of notes in the English and German languages.

I avail myself of this opportunity to renew to Your Excellency the assurances of my highest consideration.

For the Secretary of State:

Enclosure:  Forms A-E.

29

Herr Botschafter,

ich beehre mich, unter Bezugnahme auf den am 14. Oktober 2003 in Washington unterzeichneten Vertrag zwischen den Vereinigten Staaten von Amerika und der Bundesrepublik Deutschland über die Rechtshilfe in Strafsachen die Absprache zwischen der Regierung der Vereinigten Staaten von Amerika und der Regierung der Bundesrepublik Deutschland in Bezug auf Artikel 9 Absatz 5, Artikel 10 Absatz 6 und Artikel 11 Absatz 3 zu bestätigen. Diese drei Bestimmungen sehen vor, dass die Echtheit, das Vorhandensein oder das Nichtvorhandensein von Urkunden, Unterlagen und Gegenständen, die nach dem Vertrag erlangt werden, entsprechend den in dem Ersuchen angegebenen Verfahren bestätigt wird, und dass diese Urkunden, Unterlagen und Gegenstände, wenn diese Bestätigung vorliegt, bei der Beweisführung als Nachweis der darin enthaltenen Angaben nach dem Recht des ersuchenden Staates zulässig sind.

Im Laufe der Verhandlungen haben sich Vertreter unserer Regierungen auf den Wortlaut einer Reihe von Formblättern, die dieser Note beigefügt sind, geeinigt, die von den zuständigen Beamten zur Erfüllung dieser Verpflichtungen zu verwenden sind. Jede Regierung hat sich bereit erklärt, auf Ersuchen diese Formblätter zu verwenden, und sich verpflichtet, sie allen zuständigen Beamten bekannt zu geben. Für die Vereinigten Staaten von Amerika verteilt das Büro für Internationale Angelegenheiten des Justizministeriums der Vereinigten Staaten diese Formblätter an die Strafverfolgungsbehörden der Vereinigten Staaten, die Ersuchen nach dem Vertrag vorbereiten. Das Bundesministerium der Justiz der Bundesrepublik Deutschland nimmt die Formblätter in die von den deutschen Behörden bei der Erledigung ausländischer Rechtshilfeersuchen angewandten Richtlinien für den Verkehr mit dem Ausland in strafrechtlichen Angelegenheiten auf. Beide Regierungen sind sich darüber einig, dass der Inhalt der Formblätter in Deutschland als Richtlinie für eine richterliche Vernehmung Verwendung finden soll, um so die Strafbewehrung einer falschen Bescheinigung zu gewährleisten.

Ferner beehre ich mich vorzuschlagen, dass die vorliegende Note und die Antwortnote Eurer Exzellenz, welche die vorstehende Absprache im Namen der Bundesrepublik Deutschland bestätigt, als eine Vereinbarung zwischen den beiden Regierungen angesehen werden, die am selben Tag in Kraft tritt, an dem der Vertrag in Kraft tritt.

Diese Vereinbarung besteht aus Noten in englischer und deutscher Sprache.

30

Ich benutze diesen Anlass, Eure Ezellenz erneut meiner ausgezeichnetsten Hochachtung zu versichern.

Anlagen: Formblätter A-E

Unterschrift

31

<u>Form A</u>

<u>ATTESTATION OF AUTHENTICITY OF OFFICIAL RECORDS</u>

       I, [name], on the understanding that, in respect of the following statement and pursuant to the laws of [country or *Land* and country], if I were to intentionally make a false declaration to the Court, I would be liable to criminal prosecution for perjury or making false unsworn declarations, hereby attest that I hold the position of [official title] with the Government of [country or *Land* and country], that in this position I am authorized by the laws of [country or *Land* and country] to attest that the official records attached and described below are originals or exact copies of official records, and that these records are filed in [name of office or agency], which is a governmental office or agency of [country or *Land* and country].

Description of Records:

[signature]

[official title]

[office stamp or seal]

[date]

32

Form B

ATTESTATION OF ABSENCE OF OFFICIAL RECORDS

I, [name], on the understanding that, in respect of the following statement and pursuant to the laws of [country or *Land* and country], if I were to intentionally make a false declaration to the Court, I would be liable to criminal prosecution for perjury or making false unsworn declarations, hereby attest that:

1.  my position with the [name of office or agency] is [official title];

2.  [name of office or agency] is a government office or agency of [country or *Land* and country] that is authorized by law to maintain official information files for which a legal reporting, recording, or registration obligation exists, or that maintains such files in the course of carrying out its official responsibilities;

3.  records of the type described below cover matters for which the agency maintains official records pursuant to its legal reporting, recording, or registration obligation, or pursuant to its official responsibilities;

4.  in my official capacity I have checked the records or had the records checked to ascertain whether the documents described below could be found in the agency named above;

5.  no such records have been found to exist therein.

Description of records:

[signature]

[office stamp or seal]

[date]

2

33

<u>Form C</u>

<u>ATTESTATION OF AUTHENTICITY OF BUSINESS RECORDS</u>

I, [name], on the understanding that, in respect of the following statement and pursuant to the laws of [country or *Land* and country], if I were to intentionally make a false declaration to the Court, I would be liable to criminal prosecution for perjury or making false unsworn declarations, hereby attest as follows:

I am employed by or associated with [name of business from which records are sought] in the position of [job title], and therefore I am authorized and qualified to make this declaration.

I further declare that the documents attached hereto are original records or exact copies of records that:

1.  were made at or near the time at which the matter set forth therein took place, and were made by a person with knowledge of this matter or were based on information provided by a person with knowledge of this matter;

2.  were kept in the course of regularly conducted business activity;

3.  were made by the business as a regular practice; and

4.  if any such record is not the original, it is a duplicate of the original.

[date of execution]

[place of execution]

[signature]

3

34

<u>Form D</u>

<u>ATTESTATION OF ABSENCE OR NON-EXISTENCE OF BUSINESS RECORDS</u>

I, [name], on the understanding that, in respect of the following statement and pursuant to the laws of [country or *Land* and country], if I were to intentionally make a false declaration to the Court, I would be liable to criminal prosecution for perjury or making false unsworn declarations, hereby attest as follows:

I am employed by or associated with [name of business from which records are sought] in the position of [job title], and therefore I am authorized and qualified to make this declaration.

In my employment with the above-named business I am familiar with the business records it maintains.   The above-named business maintains records of its business transactions that are:

1.      made at or near the time at which the matter set forth therein took place, and  by a person with knowledge of this matter or based on information provided by a person with knowledge of this matter;

2.      kept in the course of regularly conducted business activity; and

3.      made by the business as a regular practice.

Among the records so maintained are records of individuals and entities that have accounts with or have transacted business with the above-named business.   I have checked the records or had the records checked to ascertain whether such records could be found at the business named.  No records were found reflecting any business activity between the business and the following individuals and/or entities:

[list of individuals and/or entities]

[date of execution]

[place of execution]

[signature]

4

35

<u>Form E</u>

<u>ATTESTATION WITH RESPECT TO SEIZED ITEMS</u>

        I, [name], on the understanding that, in respect of the following statement and pursuant to the laws of [country or *Land* and country], if I were to intentionally make a false declaration to the Court, I would be liable to criminal prosecution for perjury or making false unsworn declarations, hereby attest that I hold the position of [official title] with the Government of [country or *Land* and country].  I received custody of the items listed below from [name of person] on [date], at [place].

        I relinquished custody of the items listed below to [name of person] on [date], at [place] in the same condition as when I received them (or, if different, as noted below).

Description of items:

Changes in condition of the items while in my custody:

[signature]

[official title]

[place of execution]

[date of execution]

[official stamp or seal]

5

36

Washington, May 24, 2004

The Ambassador
of the Federal Republic of Germany

Ref.: RK 531.41 USA


Mr Secretary,

I have the honour to confirm receipt of your Note of May 24, 2004, proposing on behalf of your Government the conclusion of an Agreement between the Government of the United States of America and the Government of the Federal Republic of Germany.

Your Note reads as follows:

"Excellency:

I have the honor to refer to the Treaty between the United States of America and the Federal Republic of Germany on Mutual Legal Assistance in Criminal Matters signed at Washington on October 14, 2003, and to confirm the understanding reached between the Government of the United States of America and the Government of the Federal Republic of Germany with respect to Article 9 paragraph 5, Article 10 paragraph 6, and Article 11 paragraph 3. These three provisions state that the authenticity, existence or non-existence of documents, records and items obtained under the Treaty shall be certified in accordance with the procedures specified in the request, and if so certified, shall be admissible in evidence as proof of the matters stated therein in accordance with the laws of the Requesting State.


His Excellency
Secretary of State
Of the United States of America
Mr. Colin L. Powell
Washington, D.C.

37

- 2 -

During the course of negotiations, representatives of our Governments agreed on the text of a series of forms, attached to this Note, which shall be utilized by their appropriate officials in meeting these obligations. Each Government agreed to utilize these forms upon request, and undertook to make them known to all appropriate officials. The United States Department of Justice, Office of International Affairs, shall disseminate these forms on behalf of the United States of America to United States law enforcement authorities preparing requests under the Treaty. The Federal Ministry of Justice of the Federal Republic of Germany shall include the forms in the Guidelines for International Judicial Assistance in Criminal Matters (*Richtlinien für den Verkehr mit dem Ausland in strafrechtlichen Angelegenheiten*) used by the German authorities in executing foreign judicial assistance requests. Both Governments agree that the substance of the forms should be used as a guideline for a judicial examination in Germany in order to ensure that making a false attestation would constitute a criminal offence.

I have further the honor to propose that the present Note and Your Excellency's Note in reply confirming the foregoing understanding on behalf of the Federal Republic of Germany shall be regarded as constituting an agreement between the two Governments, which shall enter into force on the same day when the Treaty enters into force.

This Agreement shall consist of notes in the English and German languages.

I avail myself of this opportunity to renew to Your Excellency the assurances of my highest consideration.

Enclosure: Forms A-E."

I have the honour to inform you that my Government agrees to the proposals contained in your Note. Your Note and this Note in reply thereto shall thus constitute an Agreement between our two Governments, which shall enter into force on the same day on which the Treaty between the United States of America and the Federal Republic of Germany on Mutual Legal Assistance in Criminal Matters signed at Washington on October 14, 2003, shall

38

- 3 -

enter into force according to article 26 paragraph 2 thereof, the texts in the German and
English languages being equally authentic.

Accept, Mr Secretary, the assurances of my highest consideration.

39

<u>Form A</u>

<u>ATTESTATION OF AUTHENTICITY OF OFFICIAL RECORDS</u>

I, [name], on the understanding that, in respect of the following statement and pursuant to the laws of [country or *Land* and country], if I were to intentionally make a false declaration to the Court, I would be liable to criminal prosecution for perjury or making false unsworn declarations, hereby attest that I hold the position of [official title] with the Government of [country or *Land* and country], that in this position I am authorized by the laws of [country or *Land* and country] to attest that the official records attached and described below are originals or exact copies of official records, and that these records are filed in [name of office or agency], which is a governmental office or agency of [country or *Land* and country].

Description of Records:

[signature]

[official title]

[office stamp or seal]

[date]

1

40

<u>Form B</u>

<u>ATTESTATION OF ABSENCE OF OFFICIAL RECORDS</u>

I, [name], on the understanding that, in respect of the following statement and pursuant to the laws of [country or *Land* and country], if I were to intentionally make a false declaration to the Court, I would be liable to criminal prosecution for perjury or making false unsworn declarations, hereby attest that:

1.   my position with the [name of office or agency] is [official title];

2.   [name of office or agency] is a government office or agency of [country or *Land* and country] that is authorized by law to maintain official information files for which a legal reporting, recording, or registration obligation exists, or that maintains such files in the course of carrying out its official responsibilities;

3.   records of the type described below cover matters for which the agency maintains official records pursuant to its legal reporting, recording, or registration obligation, or pursuant to its official responsibilities;

4.   in my official capacity I have checked the records or had the records checked to ascertain whether the documents described below could be found in the agency named above;

5.   no such records have been found to exist therein.

Description of records:

[signature]

[office stamp or seal]

[date]

2

41

Form C

ATTESTATION OF AUTHENTICITY OF BUSINESS RECORDS

I, [name], on the understanding that, in respect of the following statement and pursuant to the laws of [country or *Land* and country] if I were to intentionally make a false declaration to the Court, I would be liable to criminal prosecution for perjury or making false unsworn declarations, hereby attest as follows:

I am employed by or associated with [name of business from which records are sought] in the position of [job title], and therefore I am authorized and qualified to make this declaration.

I further declare that the documents attached hereto are original records or exact copies of records that:

1.    were made at or near the time at which the matter set forth therein took place, and were made by a person with knowledge of this matter or were based on information provided by a person with knowledge of this matter;

2.    were kept in the course of regularly conducted business activity;

3.    were made by the business as a regular practice; and

4.    if any such record is not the original, it is a duplicate of the original.

[date of execution]

[place of execution]

[signature]

3

42

Form D

ATTESTATION OF ABSENCE OR NON-EXISTENCE OF BUSINESS RECORDS

I, [name], on the understanding that, in respect of the following statement and pursuant to the laws of [country or *Land* and country] if I were to intentionally make a false declaration to the Court, I would be liable to criminal prosecution for perjury or making false unsworn declarations, hereby attest as follows:

I am employed by or associated with [name of business from which records are sought] in the position of [job title], and therefore I am authorized and qualified to make this declaration.

In my employment with the above-named business I am familiar with the business records it maintains.  The above-named business maintains records of its business transactions that are:

1. made at or near the time at which the matter set forth therein took place, and  by a person with knowledge of this matter or based on information provided by a person with knowledge of this matter;

2. kept in the course of regularly conducted business activity; and

3. made by the business as a regular practice.

Among the records so maintained are records of individuals and entities that have accounts with or have transacted business with the above-named business.   I have checked the records or had the records checked to ascertain whether such records could be found at the business named.  No records were found reflecting any business activity between the business and the following individuals and/or entities:

[list of individuals and/or entities]

[date of execution]

[place of execution]

[signature]

4

43

<u>Form E</u>

<u>ATTESTATION WITH RESPECT TO SEIZED ITEMS</u>

I, [name], on the understanding that, in respect of the following statement and pursuant to the laws of [country or *Land* and country] if I were to intentionally make a false declaration to the Court, I would be liable to criminal prosecution for perjury or making false unsworn declarations, hereby attest that I hold the position of [official title] with the Government of [country or *Land* and country].  I received custody of the items listed below from [name of person] on [date], at [place].

I relinquished custody of the items listed below to [name of person] on [date], at [place] in the same condition as when I received them (or, if different, as noted below).

Description of items:

Changes in condition of the items while in my custody:

[signature]

[official title]

[place of execution]

[date of execution]

[official stamp or seal]

5

44

<u>Formblatt A</u>

<u>Bestätigung der Echtheit von amtlichen Unterlagen</u>

Ich, [Name], in dem Wissen, dass mir nach dem Recht von (Staat bder Land und Staat) bei
einer vorsätzlichen Falschaussage vor Gericht eine Strafe wegen uneidlicher Falschaussage
oder Meineides in Bezug auf die folgende Erklärung droht, bescheinige hiermit, dass ich bei
der Behörde [Staat oder Land und Staat] das folgende Amt ausübe [Amtsbezeichnung] und
dass ich in diesem Amt nach dem Recht von [Staat oder Land und Staat] zu bescheinigen
befugt bin, dass es sich bei den anliegenden und nachstehend bezeichneten amtlichen
Unterlagen um Originale oder gleichlautende Abschriften von amtlichen Unterlagen handelt,
dass diese Unterlagen bei [Name der Dienststelle oder Behörde] verwahrt sind und dass es
sich bei dieser Dienststelle oder Behörde um eine staatliche Dienststelle oder Behörde [Staat
oder Land und Staat] handelt.

Beschreibung der Unterlagen:

[Unterschrift]

[Amtsbezeichnung]

[Dienststempel/Dienstsiegel]

[Datum]

45

<u>Formblatt B</u>

<u>**Bestätigung des Nichtvorhandenseins amtlicher Unterlagen**</u>

Ich, [Name], in dem Wissen, dass mir nach dem Recht von (Staat oder Land und Staat) bei einer vorsätzlichen Falschaussage vor Gericht eine Strafe wegen uneidlicher Falschaussage oder Meineides in Bezug auf die folgende Erklärung droht, bescheinige hiermit:

1. bei [Name der Dienststelle oder Behörde] übe ich das Amt [Amtsbezeichnung] aus;

2. bei [Name der Dienststelle oder Behörde] handelt es sich um eine staatliche Dienststelle oder Behörde [Staat oder Land und Staat], die gesetzlich befugt ist, amtliche Unterlagen über Sachverhalte zu führen, für die eine gesetzliche Berichts- bzw. Aufzeichnungs- oder Registrierungspflicht besteht, oder die im Rahmen ihrer gesetzlichen Aufgabenerfüllung solche amtlichen Unterlagen führt;

3. nachfolgend ihrer Art nach bezeichnete Unterlagen haben Sachverhalte zum Gegenstand, für welche die Behörde im Rahmen ihrer gesetzlichen Berichts- bzw. Aufzeichnungs- oder Registrierungspflicht oder im Rahmen ihrer gesetzlichen Aufgabenerfüllung amtliche Unterlagen führt;

4. in meiner amtlichen Eigenschaft habe ich geprüft bzw. prüfen lassen, ob in der genannten Behörde nachfolgend beschriebene Unterlagen vorhanden sind, und

5. dabei sind keine solchen Unterlagen gefunden wurden.

Beschreibung der Unterlagen:

[Unterschrift]

[Dienststempel/Dienstsiegel]

[Datum]

46

Formblatt C

**Bestätigung der Echtheit von Geschäftsunterlagen**

Ich, [Name], in dem Wissen, dass mir nach dem Recht von (Staat oder Land und Staat) bei
einer vorsätzlichen Falschaussage vor Gericht eine Strafe wegen uneidlicher Falschaussage
oder Meineides in Bezug auf die folgende Erklärung droht, erkläre wie folgt:

Ich bin angestellt/arbeite zusammen mit [Name des Unternehmens, das die Unterlagen
herausgeben soll] und habe dort die folgende Stellung inne [Stellung in dem Unternehmen
oder Stellenbezeichnung], aufgrund deren ich zur Abgabe dieser Erklärung befugt und
befähigt bin.

Ich erkläre weiterhin, dass die anliegenden Schriftstücke Originalunterlagen oder
gleichlautende Abschriften von Unterlagen sind,

1.  die zu dem Zeitpunkt oder um den Zeitpunkt herum angefertigt wurden, an dem
    sich der darin mitgeteilte Sachverhalt ereignet hat, und zwar von einer Person, die
    Kenntnis von diesem Sachverhalt hatte, bzw. auf der Grundlage von
    Informationen, die von einer Person übermittelt wurden, die Kenntnis von diesem
    Sachverhalt hatte;

2.  die im Rahmen eines ordnungsgemäßen Geschäftsbetriebs geführt wurden;

3.  die von dem Unternehmen regelmäßig angefertigt wurden und,

4.  dass es sich bei diesen Unterlagen, falls sie keine Originale sind, um ein Duplikat
    des Originals handelt.

[Datum der Ausfertigung]

[Ort der Ausfertigung]

[Unterschrift]

47

<u>Formblatt D</u>

**<u>Bestätigung über das Nichtvorhandensein oder Fehlen von Geschäftsunterlagen</u>**

Ich, [Name], in dem Wissen, dass mir nach dem Recht von (Staat oder Land und Staat) bei
einer vorsätzlichen Falschaussage vor Gericht eine Strafe wegen uneidlicher Falschaussage
oder Meineides in Bezug auf die folgende Erklärung droht, erkläre wie folgt:

Ich bin angestellt/arbeite zusammen mit [Name des Unternehmens, das die Unterlagen
herausgeben soll] und habe dort die folgende Stellung inne [Stellung in dem Unternehmen
oder Stellenbezeichnung], aufgrund deren ich zur Abgabe dieser Erklärung befugt und
befähigt bin.

Aufgrund meiner Beschäftigung bei dem genannten Unternehmen bin ich mit den
Geschäftsunterlagen, die dort geführt werden, vertraut. Das genannte Unternehmen führt
über seine geschäftlichen Transaktionen Unterlagen, die

1. zu dem Zeitpunkt oder um den Zeitpunkt herum angefertigt werden, an dem sich
   der darin mitgeteilte Sachverhalt ereignet, und zwar von einer Person, die Kenntnis
   von diesem Sachverhalt hat, bzw. auf der Grundlage von Informationen, die von
   einer Person übermittelt werden, die Kenntnis von diesem Sachverhalt hat,
2. im Rahmen eines ordnungsgemäßen Geschäftsbetriebs geführt werden und
3. von dem Unternehmen regelmäßig angefertigt werden.

Zu diesen Unterlagen gehören Unterlagen über natürliche und juristische Personen, die
Konten bei dem genannten Unternehmen unterhalten oder geschäftliche Transaktionen mit
dem genannten Unternehmen durchgeführt haben. Ich habe geprüft bzw. prüfen lassen, ob
bei dem genannten Unternehmen Unterlagen vorhanden sind. Dabei sind keine Unterlagen
gefunden worden, die geschäftliche Aktivitäten zwischen dem Unternehmen und den
folgenden natürlichen und/oder juristischen Personen aufzeigen:

[Liste der natürlichen und/oder juristischen Personen]

[Datum der Ausfertigung]

[Ort der Ausfertigung]

[Unterschrift]

48

<u>Formblatt E</u>

**<u>Bestätigung über beschlagnahmte Gegenstände</u>**

Ich, [Name], in dem Wissen, dass mir nach dem Recht von (Staat oder Land und Staat) bei
einer vorsätzlichen Falschaussage vor Gericht eine Strafe wegen uneidlicher Falschaussage
oder Meineides in Bezug auf die folgende Erklärung droht, bescheinige hiermit, dass ich bei
dem [Staat oder Land und Staat] das folgende Amt ausübe [Amtsbezeichnung]. Ich habe die
nachstehend aufgeführten Gegenstände am [Datum] in [Ort] von [Name der Person] zur
Verwahrung erhalten.

Ich habe die nachstehend aufgeführten Gegenstände am [Datum] in [Ort] in demselben
Zustand, in dem ich sie erhalten habe (oder andernfalls in dem unten bezeichneten
Zustand), an [Name der Person] herausgegeben.

Beschreibung der Gegenstände:

Veränderung des Zustands der Gegenstände in der Zeit ihrer Verwahrung durch mich:

[Unterschrift]

[Amtsbezeichnung]

[Ort der Ausfertigung]

[Datum der Ausfertigung]

[Dienststempel/Dienstsiegel]

O

Supplementary Treaty

to

the Treaty between the United States of America

and

the Federal Republic of Germany

on Mutual Legal Assistance in Criminal Matters

The Government of the United States of America

and

the Government of the Federal Republic of Germany,


As contemplated by Article 3, paragraph (2) of the Agreement on Mutual Legal Assistance between the United States of America and the European Union signed 25 June 2003 (hereafter "the U.S.- EU Mutual Legal Assistance Agreement"),

Acknowledging that in accordance with the provisions of this Supplementary Treaty, the bilateral Treaty between the United States of America and the Federal Republic of Germany on Mutual Legal Assistance in Criminal Matters signed 14 October 2003 (hereafter "the bilateral Mutual Legal Assistance Treaty"), is applied in the manner set forth in Article 3 of the U.S.-EU Mutual Legal Assistance Agreement,

Have agreed as follows:


Article 1

Pursuant to Article 8 of the U.S.-EU Mutual Legal Assistance Agreement, Article 1, paragraph (1) of the bilateral Mutual Legal Assistance Treaty is amended to read as follows:

"(1) The Parties undertake to afford each other, through their competent authorities, the widest measure of mutual assistance in criminal investigations and proceedings, including those relating to customs, duties and taxes, in accordance with the provisions of this Treaty. Criminal investigations and proceedings for purposes of this Treaty also include:

- 3 -

1. investigations and proceedings relating to regulatory offenses (Ordnungswidrigkeiten) under German antitrust law;

2. investigations and proceedings relating to regulatory offenses to the extent that they may lead to court proceedings or be referred for criminal prosecution in the Requesting State and would constitute criminal offenses in the Requested State;

3. investigations and proceedings of a national administrative authority, investigating conduct with a view to a criminal prosecution of the conduct, or referral of the conduct to criminal investigation or prosecution authorities, pursuant to its specific administrative or regulatory authority to undertake such investigation. Mutual legal assistance may also be afforded to other administrative authorities under such circumstances. Assistance under this subparagraph shall not be available for matters in which the administrative authority anticipates that no prosecution or referral, as applicable, will take place."

Article 2

Pursuant to Article 8 of the U.S.-EU Mutual Legal Assistance Agreement, the following new paragraph (5) is added to Article 2 of the bilateral Mutual Legal Assistance Treaty:

"(5)  Requests for assistance under Article 1, paragraph (1), subparagraph 3, shall be transmitted between the authorities designated pursuant to the present Article, or between such other authorities as may be agreed by the Central Authorities."

- 4 -

Article 3

Pursuant to Article 4 of the U.S.- EU Mutual Legal Assistance Agreement, the following text is inserted into the bilateral Mutual Legal Assistance Treaty as Article 9 bis:

"Article 9 bis:

Identification of bank information

(1) 1. Upon request of the Requesting State, the Requested State shall, in accordance with the terms of this Article, promptly ascertain if the banks located in its territory possess information on whether an identified natural or legal person suspected of or charged with a criminal offense is the holder of a bank account or accounts. The Requested State shall promptly communicate the results of its enquiries to the Requesting State.

2. The actions described in subparagraph 1 may also be taken for the purpose of identifying:

    a) information regarding natural or legal persons convicted of or otherwise involved in a criminal offense;

    b) information in the possession of non-bank financial institutions, or

    c) financial transactions unrelated to accounts.

(2) In addition to the requirements of Article 17, paragraph (1), a request for information described in paragraph (1) above shall include:

    1. the identity of the natural or legal person relevant to locating such accounts or transactions;

2. sufficient information to enable the competent authority of the Requested State to:

   a) reasonably suspect that the natural or legal person concerned has engaged in a criminal offense and that banks or non-bank financial institutions in the territory of the Requested State may have the information requested; and

   b) conclude that the information sought relates to the criminal investigation or proceeding; and

3. to the extent possible, information concerning which bank or non-bank financial institution may be involved, and other information the availability of which may aid in reducing the breadth of the enquiry.

(3) Unless subsequently modified by exchange of diplomatic notes between the European Union and the United States of America, requests for assistance under this Article shall be transmitted between:

1. For the Federal Republic of Germany, the Federal Ministry of Justice; and

2. For the United States of America, the attaché responsible for the Federal Republic of Germany of the:

   a) U.S. Department of Justice, Drug Enforcement Administration, with respect to matters within its jurisdiction;

   b) U.S. Department of Homeland Security, Bureau of Immigration and Customs Enforcement, with respect to matters within its jurisdiction;

   c) U.S. Department of Justice, Federal Bureau of Investigation, with respect to all other matters.

(4) The United States of America and the Federal Republic of Germany shall provide assistance under this Article with respect to money laundering and terrorist activity

punishable under the laws of both the Requesting and Requested States, and with respect to such other criminal activity as they may notify each other.

(5) The Requested State shall respond to a request for production of the records concerning the accounts or transactions identified pursuant to this Article in accordance with
the other provisions of this Treaty."

Article 4

Pursuant to Article 6 of the U.S.- EU Mutual Legal Assistance Agreement, the following text is inserted into the bilateral Mutual Legal Assistance Treaty as Article 10 bis:

"Article 10 bis :
Video conferencing

(1) The United States of America and the Federal Republic of Germany shall take such measures as may be necessary to enable the use of video transmission technology for taking testimony of a witness or expert located in the Requested State. To the extent not specifically set forth in this Article, the modalities governing such procedure shall be as otherwise provided under this Treaty. Article 10, paragraph (4) shall apply to the use of video transmission technology in taking of testimony irrespective of whether or not the testimony taken is recorded.

(2) The Requesting and Requested States may consult in order to facilitate resolution of legal, technical or logistical issues that may arise in the execution of the request.

(3) Without prejudice to any jurisdiction under the laws of the Requesting State, making an intentionally false statement or other misconduct of the witness or expert

during the course of the video conference shall be punishable in the Requested State in the same manner as if it had been committed in the course of its domestic proceedings.

(4) This Article is without prejudice to the use of other means for obtaining of testimony in the Requested State available under applicable international treaty or under internal law.

(5) The Requested State may permit the use of video conferencing technology for purposes other than those described in paragraph (1) of this Article, including for purposes of identification of persons or objects, or taking of investigative statements."

Article 5

Pursuant to Article 5 of the U.S.- EU Mutual Legal Assistance Agreement, the following text is inserted into the bilateral Mutual Legal Assistance Treaty as Article 12 bis:

"Article 12 bis:
Joint investigative teams

(1) The United States of America and the Federal Republic of Germany shall take such measures as may be necessary to enable joint investigative teams to be established and operated in the respective territories of the United States of America and the Federal Republic of Germany, for the purpose of facilitating criminal investigations or prosecutions involving the United States of America and one or more Member States of the European Union, where deemed appropriate by the United States of America and the Federal Republic of Germany.

(2) The procedures under which the team is to operate, such as its composition, duration, location, organization, functions, purpose, and terms of participation of team

members of a State in investigative activities taking place in another State's territory shall be as agreed between the authorities responsible for the investigation or prosecution of criminal offenses, as determined by the respective States concerned.

(3)  The authorities determined by the respective States concerned shall communicate directly for the purposes of the establishment and operation of such team. A request by a United States police authority for the establishment of a joint investigative team shall be addressed to the Federal Criminal Police Office of the Federal Republic of Germany. Where the exceptional complexity, broad scope, or other circumstances involved are deemed to require more central coordination as to some or all aspects, the States nonetheless may agree upon other appropriate channels of communications to that end.

(4)  Where the joint investigative team needs investigative measures to be taken in one of the States setting up the team, a member of the team of that State may request its own authorities to take those measures without the other State having to submit a request for mutual legal assistance. The required legal standard for obtaining the measure in that State shall be the standard applicable to its domestic investigative activities."


Article 6

Pursuant to Article 9 of the U.S.-EU Mutual Legal Assistance Agreement, Article 15 of the bilateral Mutual Legal Assistance Treaty is amended to read as follows:


"Article 15
Conditions and limitations on use to protect personal and other data

(1)  Where assistance could be refused under Article 3, the Central Authority of the Requested State shall consult with the Central Authority of the Requesting State to consider whether assistance can be given subject to such conditions as it deems necessary.  If the Requesting State accepts assistance subject to these conditions, it shall comply with the conditions. Generic restrictions with respect to the legal standards of

the Requesting State for processing personal data may not be imposed by the Requested State as a condition under this paragraph to providing evidence or information.

(2) The Requesting State shall not use any evidence or information obtained under this Treaty for any other purpose than that described in the request without the prior consent of the Central Authority of the Requested State, except as specified in paragraph (3).

(3) The Requesting State may use any evidence or information obtained under this Treaty without prior consent of the Central Authority of the Requested State:

1.  for the purpose of its criminal investigations and proceedings;

2.  for preventing an immediate and serious threat to its public security, which, for the purposes of this Treaty, includes preventing the commission of serious criminal offenses;

3.  in its non-criminal judicial or administrative proceedings directly related to a purpose set forth in subparagraph 1;

4.  for any other purpose, if the information or evidence has been made public within the framework of proceedings for which they were transmitted, or in any of the situations described in subparagraphs 1, 2 and 3 of this paragraph.

(4) Where, following disclosure to the Requesting State, the Requested State becomes aware of circumstances that may cause it to seek an additional condition in a particular case, the Requested State may consult with the Requesting State to determine the extent to which the evidence and information can be protected.

(5) A State that furnishes evidence or information subject to a condition referred to in this Article may require the other State to explain, in relation to that condition, the use made of such evidence or information "

- 10 -

Article 7

Pursuant to Article 9 of the U.S.-EU Mutual Legal Assistance Agreement, Article 16 of the bilateral Mutual Legal Assistance Treaty is amended to read as follows:

"Article 16

Evidence and Information in Antitrust

Proceedings and Investigations

Information or evidence received by the Requesting State in connection with an investigation or proceeding under antitrust laws, assistance as to which may be provided under this Treaty, shall be treated as confidential in the same way as information or evidence obtained under its domestic law and only may be disclosed to persons or authorities, including courts or administrative authorities, competent for the prosecution of antitrust offenses. Such persons or authorities shall use the information or evidence only for these purposes. They may disclose the information or evidence in public court proceedings or in judicial decisions, unless the competent authority of the Requested State supplying the information or evidence raises an objection. Such objections shall be raised only in exceptional cases. They may also disclose the information or evidence for the purposes set forth in Article 15, paragraph (3), subparagraphs 1 and 2. Information or evidence disclosed pursuant to the present Article shall not be used for other purposes without prior consent of the Requested State."

Article 8

Pursuant to Article 7 of the U.S.-EU Mutual Legal Assistance Agreement, Article 17, paragraph (3) of the bilateral Mutual Legal Assistance Treaty is amended to read as follows:

"(3) Requests for mutual legal assistance, and communications related thereto, may be

made by expedited means of communications, including fax or e-mail, with formal confirmation to follow where required by the Requested State. The Requested State may respond by any such expedited means of communication. In urgent cases, requests may be made orally but shall be confirmed in writing within ten days unless the Central Authority of the Requested State agrees otherwise."

Article 9

Pursuant to Article 6, paragraph (2), of the U.S.- EU Mutual Legal Assistance Agreement, Article 21, paragraph (1) of the bilateral Mutual Legal Assistance Treaty is amended to read as follows:

"(1) The Requested State shall pay all expenses, fees and disbursements arising from the execution of a request in that State except for those related to:

1. the services of an expert;

2. translation, interpretation, and transcription;

3. the travel and appearance of a witness or expert outside the Requested State pursuant to Article 5 or inside the Requested State for the convenience of the Requesting State pursuant to Article 10;

4. the transfer of a person in custody outside the Requested State pursuant to Article 7; and

5. the costs associated with establishing and servicing the video transmission in case of requests under Article 10 bis, unless otherwise agreed by the Requesting and Requested States; other costs arising in the course of providing such assistance (including costs associated with travel of participants in the

- 12 -

Requested State) shall be borne in accordance with the other provisions of this Article."

Article 10

(1) This Supplementary Treaty shall apply to offenses committed before as well as after it enters into force.

(2) This Supplementary Treaty shall not apply to requests made prior to its entry into force; except that, in accordance with Article 12, paragraph (2), of the U.S.-EU Mutual Legal Assistance Agreement, Articles 4, 8 and 9 of this Supplementary Treaty shall be applicable to requests made prior to such entry into force.

Article 11

(1)  This Supplementary Treaty shall form an integral part of the bilateral Mutual Legal Assistance Treaty.

(2)  This Supplementary Treaty shall be subject to the completion by the United States of America and the Federal Republic of Germany of their respective applicable internal procedures for entry into force. The Parties shall thereupon notify each other that such internal procedures have been completed.

(3)  This Supplementary Treaty shall enter into force on the date of entry into force of the bilateral Mutual Legal Assistance Treaty.

(4)  In the event of termination of the bilateral Mutual Legal Assistance Treaty, the United States of America and the Federal Republic of Germany, in view of the responsibilities under Article 3, paragraph (3) of the U.S.-EU Mutual Legal Assistance

Agreement, shall consult for the purpose of determining the manner in which the provisions of this Supplementary Treaty shall continue to apply.

(5)  In the event of termination of the U.S.-EU Mutual Legal Assistance Agreement, this Supplementary Treaty shall be terminated.

DONE at Washington, this 18th day of  April 2006, in duplicate, in the English and German languages, both texts being equally authentic.

For the Government of
the United States of America:

For the Government of
the Federal Republic of Germany: